**ORAL ARGUMENT NOT YET SCHEDULED**

Nos. 23-1290
Consolidated with No. 23-1328

---

# UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

CITY OF BILLINGS, CITY OF BISMARCK, CITY OF COLORADO SPRINGS,
DANE COUNTY, FLATHEAD MUNICIPAL AIRPORT AUTHORITY,
GREATER ASHEVILLE REGIONAL AIRPORT AUTHORITY,
CITY AND BOROUGH OF JUNEAU, MASSACHUSETTS PORT
AUTHORITY, METROPOLITAN AIRPORTS COMMISSION,
MILWAUKEE COUNTY, OKLAHOMA CITY AIRPORT TRUST,
CITY OF PHILADELPHIA, RALEIGH DURHAM AIRPORT AUTHORITY,
CITY OF SAN JOSE, SPOKANE AIRPORT BOARD, and
AIRPORTS COUNCIL INTERNATIONAL – NORTH AMERICA,
*Petitioners,*

v.

TRANSPORTATION SECURITY ADMINISTRATION AND DAVID P.
PEKOSKE, ADMINISTRATOR,
*Respondents.*

---

ON PETITION FOR REVIEW OF A DECISION
OF THE TRANSPORTATION SECURITY ADMINISTRATION

---

## BRIEF OF PETITIONERS CITY OF BILLINGS ET AL.

Melissa C. Allison
David S. Mackey
Carlos R. Rosende
Anderson & Kreiger LLP
50 Milk Street, 21st Floor
Boston, MA 02109
mallison@andersonkreiger.com
dmackey@andersonkreiger.com
crosende@andersonkreiger.com
T: 617.594.5940

*Counsel for Petitioners*

March 1, 2024

**SUBJECT TO PROTECTIVE ORDER IN City of
Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR
PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS
DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE
TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED
RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC
DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to this Court's Order dated October 23, 2023, and Circuit Rules 15(c) and 28(a)(1), the City of Billings *et al.* filed a certificate as to parties, rulings, and related cases on November 21, 2023.  Dkt. 2028219.  Pursuant to this Court's Order dated November 27, 2023, this case was consolidated with case no. 23-1328, adding petitioners City of Colorado Springs and Milwaukee County (collectively, with the City of Billings *et al.*, the "Airport Petitioners").  Dkt. 2028495.

## CORPORATE DISCLOSURE STATEMENTS

The Airport Petitioners' Rule 26.1 Corporate Disclosure Statements were included in the Airport Petitioners' Joint Petitions for Review filed on October 20, 2023, and November 21, 2023.  Dkt. 2023213, 2028490.

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

i

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............. i

CORPORATE DISCLOSURE STATEMENTS ....................................... i

TABLE OF AUTHORITIES .................................................. iv

GLOSSARY .................................................................x

JURISDICTIONAL STATEMENT ..........................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................2

SUMMARY OF THE ARGUMENT ..................................................4

LEGAL AND PROCEDURAL BACKGROUND ..........................................6

    ATSA and Its Implementing Regulations ...........................6

    The 2006 Security Directive ....................................7

    The 2015 ASAC Report ...........................................9

    The 2016 Security Act .........................................11

    TSA's Proposed National Amendment .............................13

    TSA's Final National Amendment, Response to Industry Comments, and Guidance ........................................................17

STANDARD OF REVIEW ......................................................25

ARGUMENT ...............................................................25

    I.    The National Amendment Violates a Repeated Congressional Mandate for Comprehensive Federal Screening. .........................................25

    II.   The National Amendment is Arbitrary and Capricious ..............37

**SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF
BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)**

~~WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR
PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW",
AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR
OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT
AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.~~

A.  TSA Provided No Explanation For Its Decision To Shift Virtually All Responsibility For Aviation Worker Screening To Airport Operators...37

B.  TSA Failed To Address Critical Aspects of the Problem such as Ensuring Effective Security and Protecting Airport Operators from Potentially Massive Liabilities. ...............................................................42

III. The National Amendment Unconstitutionally Commandeers  Local Public Officials to Enforce Federal Security Measures ..........................................46

IV. The National Amendment Violates the Public Notice and Comment Requirements of the APA ..............................................................................53

V.  The National Amendment Requires Local Montana Officials to Engage in Conduct Which Violates State Constitutional Rights to Privacy ...............56

VI. Petitioner Airports Council International-North America has Standing to Challenge the National Amendment in the Administrative Process Before TSA and in this Court ...................................................................................60

CONCLUSION ........................................................................................................63

**SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)**

~~WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.~~

# TABLE OF AUTHORITIES

## Cases

*Advanced Energy United, Inc. v. Federal Energy Regulatory Commission*,
 82 F.4th 1095 (D.C. Cir. 2023) ............................................................61

*American Min. Congress* v. *Mine Safety & Health Admin.*,
 995 F.2d 1106 (D.C. Cir. 1993) ............................................................53

*Amerijet International, Inc. v. Pistole*,
 753 F.3d 1343 (D.C. Cir. 2014) ................................................... 25, 40

*Assoc. of Private Sector Colleges and Universities v. Duncan*,
 681 F.3d 427 (D.C. Cir. 2012) ...................................................... 43, 45

*Bonacci v. Transportation Security Administration*,
 909 F.3d 1155 (D.C. Cir. 2018) .................................................... 25, 27

*Checkosky v. SEC*,
 23 F.3d 452 (D.C. Cir. 1994) ..............................................................38

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
 467 U.S. 837 (1984) ............................................................................34

*City of Brookings Mun. Tel Co. v. FCC*,
 822 F.2d 1153 (D.C. Cir. 1987) ..........................................................41

*Ctr. for Biological Diversity v. EPA*,
 861 F.3d 174 (D.C. Cir. 2017) ............................................................61

*Deak-Perera Hawaii, Inc. v. Dept of Transp., State of Hawaii*,
 553 F. Supp. 976 (D. Hawaii) .............................................................52

*E.W. Wiggins Airways, Inc. v. Massachusetts Port Authority*,
 362 F. 2d 52 (1st Cir. 1966) ...............................................................52

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF
BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

*Electronics Information Privacy Center* v. *United States Department of Homeland Sec.*,
  653 F.3d 1 (D.C. Cir. 2011) .......................................................................... 53, 54

*Humane Society of United States v. Zinke*,
  865 F.3d 585 (D.C. Cir. 2017) ....................................................................... 42, 46

*In re: September 11 Litigation*,
  21 MC 101 (AKH) (S.D.N.Y.) ..............................................................................49

*Kentucky Mun. Energy Agency v. FERC*,
  45 F.4th 162 (D.C. Cir. 2022) ................................................................. 42, 44, 46

*Lewin v. AMR Corp. et al.*,
  03-CV-6726 (AKH) (S.D.N.Y.) .............................................................................49

*Marrie v. SEC*,
  374 F.3d 1196 (D.C. Cir. 2004) ...........................................................................38

*McKelvey v. State*,
  474 P.3d 16 (Alaska 2020) ...................................................................................59

*Murphy v. National Collegiate Athletic Association*,
  584 U.S. 453 (2018) .......................................................................................... 47, 48

*National Shooting Sports Foundation, Inc. v. Jones*,
  716 F.3d 200 (D.C. Cir. 2013) .............................................................................41

*Natural Res. Def. Counsel, Inc. v. SEC*,
  606 F.2d 1031 (D.C. Cir. 1979) ...........................................................................41

*Nichols v. Bd. of Trustees of Asbestos Workers Local 24 Pension Plan*,
  835 F.2d 881 (D.C. Cir. 1987) .............................................................................62

*Orengo Caraballo v. Reich*,
  11 F.3d 186 (D.C. Cir. 1993) ...............................................................................53

*Paralyzed Veterans of Am. v. D.C. Arena L.P.*,
  117 F.3d 579 (D.C. Cir. 1997) .............................................................................53

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF</u>
<u>BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

*People v. McKnight*,
  446 P.3d 397 (Colo. 2019) ....................................................................59

*Printz v. United States*,
  521 U.S. 898 (1997) ........................................................... 47, 49

*SecurityPoint Holdings, Inc. v. Transportation Sec. Admin.*,
  769 F.3d 1184 (D.C. Cir. 2014) ..................................... 42, 46

*Select Specialty Hospital-Bloomington, Inc. v. Burwell*,
  757 F.3d 308 (D.C. Cir. 2014) ............................... 37, 38, 39

*South Carolina v. Baker*,
  485 U.S. 505 (1988) ...........................................................52

*Southwest Airlines Co. v. Transportation Sec. Administration*,
  554 F.3d 1065 (D.C. Cir. 2009) ..................................... 26, 27

*State v. Goetz*,
  345 Mont. 421 (2008)..........................................................57

*State v. Hamilton*,
  314 Mont. 507 (2003)........................................... 56, 57, 58, 59

*State v. Malkuch*,
  336 Mont. 219 (2007)..........................................................56

*State v. Scheetz*,
  286 Mont. 41 (1997)............................................... 56, 58

*State v. Thomas*,
  401 Mont. 175 (2020)..........................................................57

*United Steel v. Mine Safety and Health Admin.*,
  925 F.3d 1279 (D.C. Cir. 2019) ........................... 37, 40, 41

*York v. Wahkiakum School District No. 200*,
  178 P.3d 995 (Wash. 2008) (en banc)...............................58

**SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF</u>**
**<u>BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)**

~~WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.~~

## Statutes

49 U.S.C. § 44901 ................................................................. 2, 4, 6, 26

49 U.S.C. § 44903 ...........................................................................33

49 U.S.C. § 46110(a) ........................................................................1

5 U.S.C. § 551 ......................................................................... 3, 53

5 U.S.C. § 553 ................................................................. 5, 15, 53, 54

5 U.S.C. § 555(b) .............................................................................62

6 U.S.C. § 441–444 ..........................................................................50

Aviation and Transportation Security Act, Pub. L. 107-71, § 201(b), 115 Stat. 597 (2001).......................................................................................49

FAA Extension, Safety and Security Act of 2016, Pub. L. No. 114-190, § 34072, 4, 11, 12, 20, 26, 30, 31, 32, 34, 35, 36

TSA Modernization Act, Pub. L. No. 115-254, tit. I, § 1934, 132 Stat. 3186 (2018) ................................................................................. 12, 35

## Other Authorities

Off. Of Mgmt. & Budget, Exec. Off. of the President, Memorandum on Broadening Public Participation and Community Engagement in the Regulatory Process, (July 19, 2023), https://www.whitehouse.gov/wp-content/uploads/2023/07/Broadening-Public-Participation-and-Community-Engagement-in-the-Regulatory-Process.pdf............................................................55

## Regulations

49 C.F.R. § 1540.107 ......................................................................27

49 C.F.R. § 1540.5 ...........................................................................28

49 C.F.R. § 1542.105 ............................................... 1, 16, 23, 55, 61, 62

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF</u>
<u>BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

49 C.F.R. § 1542.201 ...............................................................................33

49 C.F.R. § 1542.203 ...............................................................................33

49 C.F.R. § 1542.205 ...............................................................................33

49 C.F.R. § 1542.207 ...............................................................................33

49 C.F.R. § 1542.303 ...............................................................................11

6 C.F.R. 25.2 ...........................................................................................51

67 Fed. Reg. 8340 (Feb. 22, 2002) ............................................................7

Civil Aviation Security Rules, 67 Fed. Reg. 8340 (Feb. 22, 2002) (to be codified at 49 C.F.R. pt. 1540) ...............................................................28

Exec. Order No. 13,563, 76 Fed. Reg. 3821-3823 (Jan. 21, 2011) .........55

## Constitutional Provisions

Mont. Const., Art. II, § 10..........................................................................56

U.S. Const. Amend. X.................................................................................3

U.S. Const., Art. III ....................................................................................3

## Legislative History

147 Cong. Rec. H8302 (Nov. 16, 2001) ........................................... 36, 42

147 Cong. Rec. S10,437 (Oct. 10, 2001) ...................................................28

147 Cong. Rec. S10,438 (Oct. 10, 2001) ............................................ 29, 39

147 Cong. Rec. S10,803 (Oct. 17, 2001) ...................................................36

147 Cong. Rec. S11,974 (Nov. 16, 2001)........................................... 29, 30

H. R. Rep. No. 118-123, at 44 (2023)................................................ 22, 54

**SUBJECT TO PROTECTIVE ORDER IN CITY OF
BILLINGS V. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**

**WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.**

H.R. Rep. No. 107-296 (2001)......................................................................30

S. Rep. No. 118-85 (2023)..........................................................................23

SUBJECT TO PROTECTIVE ORDER IN CITY OF
BILLINGS V. TSA, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR
PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW",
AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR
OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT
AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

# GLOSSARY

| | |
|---|---|
| AAAE | American Association of Airport Executives |
| ACI-NA | Airports Council International – North America |
| AOA | Air Operations Area |
| APA | Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.* |
| ASAC | Aviation Security Advisory Committee |
| ASP | Airport Security Program |
| ATLAS | Advanced Threat Local Allocation Strategy |
| ATSA | Aviation and Transportation Security Act, 49 U.S.C. §§ 44901 *et seq.* |
| AWST | Aviation Worker Screening Tool |
| DHS | U.S. Department of Homeland Security |
| EDSE | Explosive Detection Screening Equipment |
| FAA | Federal Aviation Administration |
| FSD | Federal Security Director |
| SIDA | Security Identification Display Area |
| SRC | Screening Requirement Calculator |
| TSA | Transportation Security Administration |
| TSO | Transportation Security Officer |

**SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)**

**WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.**

## JURISDICTIONAL STATEMENT

Pursuant to 49 C.F.R. 1542.105(c), the respondent, the Transportation Security Administration ("TSA"), had subject matter jurisdiction over the Petitions for Reconsideration filed by the Airport Petitioners, regarding TSA's issuance of the Aviation Worker Screening National Amendment, TSA-NA-23-02 ("National Amendment"). That regulation permits an airport operator to submit to TSA a Petition for Reconsideration of an amendment to an airport security program "not later than 15 days before the effective date of the amendment." 49 C.F.R. 1542.105(c)(2). The effective date of the National Amendment was initially September 25, 2023, Joint Appendix ("App. __") 664, and Petitions for Reconsideration were therefore due on September 10, 2023. Each of the Airport Petitioners filed its Petition for Reconsideration before that date. *E.g.*, App. 800 (City of Billings' Petition).

TSA denied each of the Airport Petitioners' Petitions for Reconsideration, *e.g.*, App. 947 (TSA's denial of City of Billings' Petition), with the earliest of these denials dated August 24, 2023. App. 867, 880. These denials constitute final TSA orders pursuant to 49 U.S.C. § 46110(a), *e.g.,* App. 961, which permits a person "disclosing a substantial interest" in such orders to file a petition for review of the

~~WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.~~

orders in this Court.  Such petitions "must be filed not later than 60 days after the order is issued."  *Id.*  Fourteen Airport Petitioners filed petitions for review in this Court on October 20, 2023, Dkt. 2023213, and two additional Airport Petitioners, the City of Colorado Springs and Milwaukee County, filed petitions for review in this Court on November 21, 2023.  Dkt. 2028490.  Each of the Airport Petitioners thus joined in a petition for review within 60 days of the TSA's denial of the Petitions for Reconsideration.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.  Whether TSA's attempt through the National Amendment to abdicate its responsibility to screen airport workers entering the secured or sterile areas of our nation's airports is contrary to law, because it mandates that local airport operators assume a security responsibility that Congress assigned to TSA in the Aviation and Transportation Security Act ("ATSA"), 49 U.S.C. §§ 44901 *et seq*., and in the FAA Extension, Safety and Security Act of 2016 ("2016 Security Act"), Pub. L. No. 114-190, § 3407(a)(3).

2.  Whether the National Amendment is arbitrary and capricious because TSA failed to provide adequate justification for shifting its responsibilities to

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

2

airport operators and failed to address concerns raised by the airport industry that the National Amendment risks degrading security.

3. Whether the National Amendment's abdication of TSA's airport worker screening responsibilities, and its imposition of more than $300 million in costs as well as extraordinary liability risks on local airport operators, violate the Tenth Amendment to the U.S. Constitution.

4. Whether TSA promulgated the National Amendment in violation of the rulemaking requirements of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq*., which require public notice and comment, not simply notice to the affected industry.

5. Whether the National Amendment imposes obligations on Montana officials to conduct searches which violate state constitutional rights to privacy.

6. Whether the Airports Council International – North America ("ACI-NA") has representational standing to challenge the National Amendment, as a representative of its member airports, in the administrative process before TSA and in this Court under Article III of the United States Constitution.

**SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)**

**WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.**

## SUMMARY OF THE ARGUMENT

Immediately following the terrorist attacks on September 11, 2001, Congress enacted ATSA, and placed the responsibility for screening individuals with access to the secure areas of airports squarely in the hands of a professional, federal security force. ATSA's foundational goals were the creation of a "federal system with Federal employees and Federal standards," the "federalization of the screening process," and public confidence that "[e]very person and every bag at every airport big and small, will be screened by federal law enforcement personnel, no exceptions." *Infra* pp. 28-30. Fifteen years later Congress reconfirmed its commitment to screening by a federal workforce when it enacted the 2016 Security Act, requiring that TSA "expand the use of transportation security officers and inspectors" to screen airport workers. *Infra* pp. 30-32. TSA's decision, reflected in the National Amendment, to walk away from its Congressionally-mandated screening responsibility for airport workers is a significant step backward. It replaces a professional, federal security force with a civilian force that lacks the authority of the federal government. In short, the National Amendment's requirement that airports, in place of TSA, perform worker screening risks diminishing security. *Infra* p. 32-36.

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

The National Amendment is also arbitrary and capricious, with *no* indication of the rationale for shifting worker screening responsibilities from TSA to airports, *no* consideration of the risks of harm to aviation security caused by TSA's abdication of this role, and *no* consideration of the risk of catastrophic liability imposed on airports. *Infra* pp. 37-46. The National Amendment was also promulgated in violation of the public notice and comment requirements under the APA, 5 U.S.C. § 553(b)(3), because TSA unlawfully initiated this policy change through a purported wholesale amendment to Airport Security Programs and never solicited the views of those most affected – the traveling public. *Infra* pp. 53-56.

The National Amendment is not about enhanced security, it is about saving TSA money by unconstitutionally commandeering local airport officials to fulfill the responsibilities of a distinctly federal program. TSA has estimated that this shift in responsibility will cost airports over the next five years more than $300 million, while over the same period TSA will incur only $300,000 in costs for its own *de minimis* role in "oversight and support." On top of the financial burdens on local airport operators, the National Amendment imposes unacceptable liability risks on airports in the event of a security breach or terrorist attack. *Infra* pp. 48-51. The National Amendment also imposes responsibilities on certain of the

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

Airport Petitioners which they simply cannot fulfill in a way that is consistent with state constitutional protections for the right to privacy. *Infra* pp. 56-60.

Finally, ACI-NA, as "the voice of North American Airports" to advance "policies to strengthen commercial airports' ability to serve their passengers, customers and communities," has standing to challenge the National Amendment at the administrative level and in this Court. *Infra* pp. 60-62.

For all of these reasons, this Court should reverse the TSA's denial of the Airport Petitioners' Petitions for Reconsideration, and vacate the National Amendment.

## LEGAL AND PROCEDURAL BACKGROUND

## ATSA and Its Implementing Regulations

Following the 9/11 terrorist attacks, Congress acted quickly to federalize the screening function at our nation's airports. ATSA required TSA to "provide for the screening of all passengers and property … that will be carried aboard a passenger aircraft" and mandated that "the screening shall . . . be carried out by a Federal Government employee." 49 U.S.C. § 44901(a). Though ATSA itself speaks of "the screening of all passengers and property," 49 U.S.C. § 44901(a), TSA recognized that screening only passengers, but not others entering the secured

**WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.**

and sterile areas of airports, would be inadequate to achieve the statutory purpose.

TSA accordingly promulgated regulations providing that the screening

requirements apply to "*individuals* entering a sterile area where screening is

conducted by TSA."  67 Fed. Reg. 8340, 8344 (Feb. 22, 2002) (emphasis added).

*See infra* pp. 27 to 28.

Beginning from TSA's earliest days, TSA employees undertook the

screening of airport workers.  App. 1186.  TSA did so initially through its

"Aviation Direct Access Screening Program," later through its "Operation

Playbook," and currently through its "Advanced Threat Local Allocation Strategy"

("ATLAS"), using "roving teams of Transportation Security Officers, Behavior

Detection Officers and Transportation Security Inspectors to conduct random and

unpredictable physical screening/inspection of employees working in or accessing

secured areas at direct access points."  App. 1186.

## The 2006 Security Directive

In 2006, TSA issued a Security Directive (SD-1542-06-01) requiring airport

operators to work with TSA in this effort by:

> [c]onduct[ing] random inspections of employees prior to
> permitting them access to the SIDA through access points
> other than the passenger screening checkpoint at a rate
> approved by the [local TSA Federal Security Director], but

**SUBJECT TO PROTECTIVE ORDER IN CITY OF
BILLINGS V. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**

**WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR
PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW",
AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR
OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT
AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.**

not less than ▮ of the total number of persons entering the SIDA each day.

App. 2.  Only two days later, TSA abandoned the ▮ requirement, leaving the

rate of inspection up to local TSA Federal Security Directors ("FSDs"), and added

that the inspector should determine whether the airport workers were carrying

"liquids, gels or aerosols."  App. 6.  In its final form, the 2006 Security Directive,

SD-1542-06-01E, required that airports:



App. 1209.

Pursuant to TSA's 2006 Security Directive, airports began to augment

TSA's worker screening efforts by performing visual inspection of workers to

ensure they had "valid ID and access control media," and were not "carrying

prohibited items."  *Id.*  Airports did so with relatively modest contributions from

their own employees, and under the direct and exclusive supervision of TSA.  For

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

8

example, Massport, with the approval of the local FSD, began devoting ▮ employee hours/month at Logan to fulfill the TSA directive.  App. 750. Throughout this period, "TSA maintained primary responsibility at Logan" for the inspection of airport workers.  App. 750; s*ee also* App. 767 (at Spokane, "majority" of worker inspection activity "performed by the TSA without airport personnel present"); App. 774 (at Glacier Park, airport "began to devote approximately ▮▮▮▮ per week to check access media at employee portals"); App. 802 (at Billings, airport "began to devote a few employee hours per week in ▮▮▮▮▮▮▮ to check access media at employee portals, and to do a visual check for prohibited items"); App. 834 (at Dane County "majority of this activity… has been performed by TSA without airport personnel present").  There is nothing in the record subsequent to the issuance of the 2006 Security Directive that reflects that any of the Airport Petitioners failed to comply with the inspection frequency required by their local FSDs under this Security Directive.

## The 2015 ASAC Report

In early 2015, the Acting TSA Administrator requested that the Aviation Security Advisory Committee ("ASAC") study ways to enhance airport worker screening.  There were five (5) TSA senior executives on the Committee, and it

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

issued its report on April 8, 2015. App. 1175, 1206. It recommended that "*TSA*,

with associated industry support, should increase the frequency of random and

unpredictable employee screening/inspection at airports," App. 1179 (emphasis

added), that "*TSA* should expand random employee screening/inspection under

Operation Playbook," App. 1187 (emphasis added), and that "DHS," the

Department of Homeland Security, should "immediately shift existing resources,

as needed, to expand the *TSA's* random employee screening/inspection program."

*Id.* (emphasis added). The ASAC Report did note that "airport and aircraft

operators and law enforcement personnel should be invited to support Playbook

activities, where practicable," *id.,* but was otherwise emphatic that TSA, not

airports, should expand its commitment to worker screening.

But only two weeks after completion of the ASAC Report, on April 29,

2015, TSA issued an Information Circular on worker inspection, recommending,

but not requiring, that airport operators, "in collaboration with your Federal

Security Director (FSD), increase the number of continuous random inspections of

individuals entering the sterile/secured area through access points other than the

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR
PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW",
AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR
OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT
AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

screening checkpoints." IC 15-01, App. 24.[1]  Later that year, TSA issued additional Information Circulars, recommending, but not requiring, a number of additional measures for airport operators regarding inspections of airport worker access media, personal belongings and outerwear.  App. 1212-1222.  Neither of these Information Circulars reflects ASAC's recommendations regarding enhanced aviation worker screening by TSA.

## The 2016 Security Act

At approximately the same time as TSA distributed these Information Circulars recommending additional inspections of airport workers by airport operators, Congress took action to enforce ASAC's recommendations regarding additional inspections of airport workers by TSA.  In the 2016 Security Act, Congress directed TSA to "develop a model and best practices" that would, among other measures, "subject airport workers to random physical security inspections *conducted by TSA representatives* in accordance with this section."  2016 Security Act, Pub. L. No. 114-190, § 3407(a)(3) (emphasis added).  Further, Congress directed that:

---

[1] Information Circulars "notify airport operators of security concerns."  49 C.F.R. § 1542.303(a).  Only Security Directives contain "mandatory measures."  49 C.F.R. § 1542.303(b).

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

> [c]onsistent with a risk-based security approach, [TSA] *shall expand the use of transportation security officers and inspectors* to conduct enhanced, random and unpredictable, data-driven, and operationally dynamic physical inspections of airport workers in each SIDA of an airport and at each SIDA access point…

*Id.* at § 3407(b)(3). Two years later Congress reiterated TSA's responsibility. *See* TSA Modernization Act, Pub. L. No. 115-254, tit. I, § 1934, 132 Stat. 3186, 3573 (2018) (mandating that worker screening shall be "consistent" with the 2016 Security Act and be "TSA-led").

Nonetheless, following enactment of the 2016 Security Act, TSA continued to issue Information Circulars to airport operators recommending that airport operators expand their role in airport worker inspections. *E.g.*, App. 1223-1243. There is nothing in any of these Information Circulars reflecting the Congressional directive to TSA to "expand the use of transportation security officers and inspectors to conduct . . . physical inspections of airport workers." 2016 Security Act § 3407(b).

In 2018, TSA incorporated its worker inspection requirements from the 2006 versions of its Security Directive into a new set of Security Directives, SD 1542-18-01. App. 54, 71. The worker inspection requirement in the 2018 Security

**SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)**

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

12

Directive series was identical to the worker inspection requirement in the 2006 Security Directive series.  Compare App. 74 to App. 13.

## TSA's Proposed National Amendment

In 2019, the ASAC issued a report entitled "Review of TSA's Insider Threat Advisory Group Findings."  App. 544.  It once again advocated for enhanced screening of airport workers conducted by TSA and acknowledged that TSA should do so "in partnership with local industry stakeholders."  App. 550.  But the TSA action at issue here is far from a "partnership."  Instead, on October 6, 2020, TSA issued the proposed National Amendment, TSA-NA-20-02, App. 102, which as TSA later acknowledged, "placed the responsibility to screen aviation works [sic] at airports on the airport operator."  App. 592; *see also* App. 734-735.  The proposed National Amendment required that "[t]he airport operator must, at a minimum, conduct the aviation worker screening in a random continuous manner," App. 106, that the screening "must be able to detect unauthorized weapons, explosives and incendiaries," App. 106, and that the screening must include at a minimum a "search of the aviation worker's person; . . . outer coats and jacket; and . . . accessible property."  App. 106.  The proposed National Amendment would direct airport operators to conduct worker screening based on "the operational

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

screening hours allocated by the Airport Insider Threat Screening Estimation Tool." App. 105. The Screening Estimation Tool employs a formula using the total number of access points from the terminal to the secured and sterile areas of the airport, and the total number of airport workers holding access media. App. 752.

Based on this formula, as reflected in cost analyses performed by TSA, the proposed National Amendment would impose $300,000,000 in screening costs on airports over five years. *Infra* pp. 19-20. For example, at Oklahoma City the additional required staffing "would cost approximately between $800,000 and $1,000,000 annually." App. 790. At Glacier Park, the commitment would expand from ▮ employee hours/week to ▮ hours/week, requiring the hiring of four additional employees to conduct the random screenings. App. 776. At Milwaukee, the airport would be required to conduct screening for up to ▮ hours per week. App. 978. At Billings and Colorado Springs, the National Amendment would require the hiring of six more individuals, App. 804, 989, and at Raleigh-Durham, three more full time employees. App. 817.

The National Amendment also gives airport operators 18 months to identify and develop, and submit to the FSD, a plan for the acquisition, installation, and

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

operation of Explosive Detection Screening Equipment (EDSE).  App. 670-671.

The cost of purchasing EDSE falls entirely on airport operators, totaling $13

million over the first five years of the program.  App. 679, 703.  This estimate does

not account for the expense of infrastructure upgrades to support the use of EDSE,

reflecting that the true cost to airports is higher.  When airport operators asked

TSA what types and quantities of EDSE to procure, TSA responded that airports

should do whatever "will work best for them" and promised to promulgate a list of

EDSE "assessed to perform at a reasonable standard," but noted that airports are

not required to purchase EDSE from this list.  App. 746.  Under the Amendment,

individual airports would be responsible for both developing their own EDSE

operating procedures and training EDSE operators.  App. 670-671, 740-741, 745-

746.  The extent of TSA's "oversight" is merely ensuring that airport operators

comply with their own EDSE protocols.  App. 696-697.

TSA did not issue the proposed National Amendment with any of the public

notice required by the APA, 5 U.S.C. §§ 553(b)-(c), but instead distributed it only

to airport and aircraft operators.  TSA did so because, it contends, 49 C.F.R.

1542.105(c) permits, without any public notice, "the designated official" to

"amend a security program" if "safety and the public interest require an

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

amendment." But the amendment described in that regulation is an amendment to the security plan of a specific "airport operator," *id*. § 1542.105(c)(1)-(2), not to all airport operators nationwide. Because of TSA's unreasonably broad interpretation of § 1542.105(c), the travelling public had no opportunity to express its views.

But notwithstanding the absence of public notice, industry reaction to the proposed National Amendment was swift. TSA received comments from 170 different airports as well as the two largest airport trade associations, ACI-NA, App. 1244, and the American Association of Airport Executives ("AAAE"). App. 1257. ACI-NA's comments are reflective. As ACI-NA wrote, TSA, not the airport operator,

> is best positioned to provide for the screening of airport workers. The agency already has the ability to assess, hire and train, and oversee large numbers of TSOs. In addition, systems are currently in place to promptly disseminate intelligence information, make necessary adjustments to screening technology algorithms, standard operating procedures and ensure TSOs are appropriately trained on the latest screening protocols intended to respond to the current threat tactics, techniques, and procedures.

App. 1244; *see* App. 1262. The industry also expressed concerns about the burdens on budget and staffing imposed by the National Amendment, *e.g.*, App. 1244-1256, 1260, 1269-1273; about the potential liability associated with worker

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF</u> <u>BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

screening, *e.g.* App. 1262, 1272; about TSA's refusal to provide specific screening procedures and training, *e.g.* App. 1254, 1269; and a host of other issues.

### TSA's Final National Amendment, Response to Industry Comments, and Guidance

On April 27, 2023, more than two years after issuing its proposal, TSA issued the final National Amendment, TSA-NA-23-02, with an effective date of September 25, 2023. App. 664. TSA made only modest changes to the proposed security program, *e.g.*, exempting Category III and IV airports, modifying the screening hour calculation tool by creating a Screening Requirement Calculator (SRC), excluding emergency exit doors from the Amendment's reach, and extending the timeframe for deployment of explosive detection screening equipment to three years, but otherwise left the requirements of the proposed National Amendment largely intact. App. 664.

At the same time it issued the final National Amendment, TSA also provided its response to comments from the industry. Disposition of Comments to TSA's Proposed Airport Security Program National Amendment, App. 587. TSA did not address the comments that TSA was far better suited than airports to effectively screen airport workers. Instead, TSA simply reiterated its intention to "plac[e] the responsibility to screen aviation works [sic] at airports on the airport operator."

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

App. 592; *see also* App. 734-735.  The Disposition of Comments emphasized that TSA would not require "any specific screening method," though "visual screening [would not be] sufficient to meet the requirements" of the National Amendment. App. 598.

With respect to airports' concern about liability for a terror attack, TSA merely "acknowledge[d] that the nature of the [National Amendment's] requirements may subject airports to liability and recommend[ed] the airport take that into account when developing aviation worker standard operating procedures." App. 640.  TSA added that "[f]ederal regulations preempt state laws.  Airport operators should have current liability protection that should be applicable." *Id*. With respect to liability for "potential 4th amendment complaints," TSA noted, cryptically, that if "anyone conducting screening . . . is following the procedures established for screening, any items that are found would be admissible in a subsequent criminal prosecution." App. 601.  TSA then summarized its dismissal of airports' liability concerns, stating:

> TSA recommends that airport operators consider any liability concerns associated with screening protocols when developing their [screening procedures.]  TSA recommends that airport operators work with their legal counsel to develop programs that provide adequate training to employees to mitigate these concerns.

SUBJECT TO PROTECTIVE ORDER IN CITY OF BILLINGS V. TSA, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

App. 610.

With respect to the financial burden on airports, "TSA acknowledge[d] the additional staffing and budget burden that airport operators may need to incur." App. 617. That was an extraordinary understatement. A cost analysis conducted by TSA in February, 2023, reflected that the total cost to airports over a five year period would be approximately $350 million. App. 658-659. TSA revised that cost estimate in June, 2023, and estimated a total cost to airports over a five year period at approximately $302 million. App. 723.

Over that same period, and reflective of TSA's utter abdication of responsibility for worker screening, TSA estimated its own costs for worker screening at $16.5 million, including $16.2 million for auditing airport compliance, and a grand total of $300,000 over five years for "oversight and support." App. 659, 679, 723. TSA based this $300,000 estimate for "oversight and support" on its anticipation that FSDs "will spend eight (8) hours per year on aviation worker screening oversight duties." App. 698. As TSA's cost analysis touted, "TSA costs are less than 5% of total costs," App. 659, and "only represent a small portion of the NA overall costs." App. 715. TSA's assertion that its approach to worker

**SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)**

~~WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.~~

screening is "collaborative" and "shared," *e.g.,* App. 882, grossly misstates the effect of the National Amendment.

Shortly after it issued the final National Amendment, TSA hosted a conference call to provide an overview to airport operators of the final National Amendment, and to answer questions submitted in advance of the call. AAAE's summary of the TSA call made clear how far the Aviation Worker Amendment strayed from the Congressional goal of a federal screening workforce with uniform training and standards. Not only did the Amendment impose enhanced screening obligations on airport operators in a way that is directly inconsistent with ATSA and the 2016 Security Act, but TSA made clear that it would:

> not provide training to meet the ASP amendment training requirements. Airport operators are responsible for determining the screening procedures that will be used to meet the screening requirements in the ASP amendment; as a result, airport operator conducted screening will vary greatly by airport depending on state and local ordinances, equipment or technology used, search procedures, prohibited items and/or exempt tools of the trade, etc. Since screening procedures will vary by airport, the training will vary as well so TSA has left it to airport operators to develop and implement training based on the airport's screening procedures.

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

*E.g.*, App. 753, 777.  In short, TSA acknowledged it would have no role in training, no role in establishing screening procedures, and, as its cost analyses reflected, was effectively walking away from the issue.

On June 21, 2023, TSA issued its answers to "Frequently Asked Questions." App. 728.  TSA repeated  that "the airport is responsible for implementing and conducting screening.  It is also responsible for developing resolution procedures, communicating all pertinent information regarding their screening program to relevant stakeholders, and developing any prohibited lists of unauthorized weapons, explosives and incendiaries."  App. 734-735.  In addition,  TSA took pains, once again, to distance itself from any obligation to conduct training.  "TSA will not provide training, nor will it prescribe how a search must be accomplished. The methods and training requirements must be developed and implemented by the airport."  App. 741.  Finally, TSA reiterated its non-answer to the liability question posed by airports:

> In general, federal regulations preempt state laws. Airports should have current liability protection that would be applicable.  TSA will not provide a legal opinion on the issue of legal liability and insurability.  Due to variations in state, county or local laws and requirements, legal advice regarding how best to isolate those persons conducting a search should be provided by the employing entity.

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

App. 734.

On June 27, 2023, the House Committee on Appropriations added its voice to the deep industry concern about the Aviation Worker Amendment.  Though not included in the DHS Appropriations Bill for FY 2024, the Committee included in its Report on the Bill the following:

> Aviation Worker Screening. - - TSA recently issued an Airport Security Program (ASP) amendment that requires airports to significantly increase airport-performed physical screening of employees and procure explosive detection screening (EDS) equipment for the first time. The Committee is concerned that these new mandates, which require the establishment of screening operations at airports that parallel the staffing and infrastructure TSA already has in place for travelers, impose an undue burden on airport operators and are being implemented without conducting a thorough cost-benefit analysis or risk assessment to justify the change.

H. R. Rep. No. 118-123, at 44 (2023).  In the absence of any analysis of the "undue burden on airport operators," any analysis of the costs and benefits of the National Amendment, or any "risk assessment," the Committee:

> urge[d] TSA to rescind the current ASP amendment and solicit a formal round of notice and comment to understand the full financial and operational impacts of this proposal on airports and the expected benefits to aviation security.

*Id.*

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

One month later, on July 27, 2023, the Senate Appropriations Committee weighed in, noting the "undue burdens on airport operators," TSA's failure to conduct a "thorough cost benefit analysis or risk assessment," and the potential that the National Amendment requires local officials "to exceed their legal authority" under applicable state laws.  S. Rep. No. 118-85, at 67 (2023).

Beginning on July 12, 2023, through September 6, 2023, the Airport Petitioners filed Petitions for Reconsideration of the National Amendment pursuant to 49 C.F.R. 1542.105(c)(2).  The Airport Petitioners include fifteen different airport sponsors, as well as ACI-NA.  The airport sponsors reflect a diverse cross-section of the nation's airports in size and geography: large hub airports including Boston Logan International Airport, Minneapolis-St. Paul International Airport, and Philadelphia International Airport; medium hub airports including Milwaukee Mitchell International Airport, Raleigh-Durham International Airport, and San Jose Mineta International Airport; small hub airports including Billings-Logan International Airport, Spokane International Airport, Juneau International Airport, Dane County Regional Airport, Colorado Springs Airport, and Will Rogers Airport (Oklahoma City); and non-hub airports including Asheville Regional Airport, Bismarck Airport, and Glacier Park International Airport.

**SUBJECT TO PROTECTIVE ORDER IN CITY OF BILLINGS V. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**

**WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.**

TSA denied each of these Petitions for Reconsideration, though shortly thereafter it announced a 12-month "Informed Compliance" period.  App. 992, 996.  TSA pledged not to "pursue civil enforcement action against airports that are making good faith efforts towards implementation of the requirements" of the National Amendment by September 25, 2024, but claimed that it was "not extending or modifying the effective date" of the Amendment. App. 996.  The Airport Petitioners then timely filed the consolidated petitions for review with this Court.[2]  Dkt. 2023213, 2028490.

---

[2] TSA's National Amendment FAQ "Version 2.0" was released on November 15, 2023, App. 1150, more than six months after TSA issued the National Amendment and three-and-a-half weeks after the Airport Petitioners filed their Joint Petition for Review in this Court, and is therefore not properly a part of the administrative record.  *See State of Delaware Dept. of Natural Resources and Environmental Control v. U.S. Army Corp of Engineers*, 722 F.Supp.2d 535, 542 (D. Del. 2010) ("[t]he focus of APA review is…the administrative record that existed at the time of the challenged agency action").  In any case,  TSA indicated in this document that it could "facilitate training," App. 1155, but once again reiterated its refusal to "specify procedures or training requirements."  App. 1154.  It did reference unidentified Information Circulars as well as other manuals ("coming soon") which "may serve as excellent models and touchstones."  App.  1155. Whatever TSA's contribution to the effort, it is presumably subject to its estimate that it would spend only $300,000 over five years in supporting airports' efforts nationwide.  App. 659, 679, 723.

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

## STANDARD OF REVIEW

The Court defers to TSA's discretion in matters of civil aviation security unless TSA's action is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." *Bonacci v. Transportation Security Administration*, 909 F.3d 1155, 1159 (D.C. Cir. 2018) (quoting 5 U.S.C. § 706(2)(A)). Where TSA has failed to "examine the relevant data and articulate a satisfactory explanation for its action," *United Airlines, Inc. v. Transportation Security Administration*, 20 F.4th 57, 62 (D.C. Cir. 2021) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)), or the agency's determination is "without observance of procedure required by law," the Court must "hold [the decision] unlawful and set [it] aside." 5 U.S.C. §§ 706(2)(A), (D); *see Amerijet International, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (an agency's decision is arbitrary and capricious if the agency failed to "articulate an explanation for its action").

## ARGUMENT

## I. The National Amendment Violates a Repeated Congressional Mandate for Comprehensive Federal Screening.

TSA has no authority to issue the National Amendment because it is directly contrary to the federal screening regime established in ATSA and reinforced in the

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

2016 Security Act.  As this Court has recognized, Congress has entrusted TSA

"with the primary responsibility for civil aviation security."  *Southwest Airlines

Co. v. Transportation Sec. Administration*, 554 F.3d 1065, 1067 (D.C. Cir. 2009).

Although ATSA references the "screening of all *passengers* and property," 49

U.S.C. § 44901(a) (emphasis added), TSA has reflected in briefs to this court, in its

own regulations and in its practice the agency's own understanding that Congress

intended to create a comprehensive, federally-controlled screening system for all

*individuals* and property entering the secured and sterile areas.

TSA itself has acknowledged that screening only passengers, but not others

who may come in contact with passengers in the secured and sterile areas, would

be wholly inadequate.  As TSA itself has argued:

> [A] passenger who had been thoroughly screened without
> error at a checkpoint could nonetheless become lethally
> dangerous with the help of an insider who covertly
> provides the passenger with a prohibited item once he
> enters the sterile area . . . The threat is not hypothetical.

Addendum at 14 (Public Redacted Brief for Respondent Transportation Security

Administration in *Bonacci v. Transportation Security Administration*, No. 17-1116

(D.C. Cir.), reported at 909 F.3d 1155 (D.C. Cir. 2018).  As a result, as TSA has

also argued,

**SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF
BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)**

~~WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.~~

26

consistent with Congress's intent to empower the agency to take all reasonable measures to protect passenger safety, [ATSA] authoriz[es] the inspection of the person and property of *any individual - passenger or non-passenger – who enters the controlled boarding area.  See* 49 C.F.R. 1540.105-107.    Petitioners' notion that this phrase nonetheless excludes the inspection of non-passengers and the property they carry suggests a limitation on TSA's authority *that is completely at odds with the statute's overriding purpose of safeguarding passengers from harm.*

Addendum 65 (Final Brief For Respondent Transportation Security Administration in *Southwest Airlines Co.* v. *TSA*, 554 F.3d at 1065) (emphasis added); *see also Bonacci*, 909 F.3d at 1157-61 (TSA has the statutory authority to screen airline crewmembers); *Southwest Airlines Co.*, 554 F.3d at 1071 (noting "possible source[s] of TSA authority to screen non-passengers.").

Because limiting TSA's responsibility to screen only passengers but not airport workers "is completely at odds with the statute's overriding purpose," Addendum 65, TSA's regulations implementing ATSA reflect that TSA has the responsibility to screen "individuals" or "persons," not just "passengers," entering the secured and sterile areas.  According to 49 C.F.R. § 1540.107(a), "[n]o *individual* may enter a sterile area or board an aircraft without submitting to the screening and inspection of his or her person and accessible property" (emphasis

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

added). As TSA explains in the preamble to this regulation, "section 1540.107 ... applies to *individuals* entering a sterile area where screening is conducted *by TSA...*" Civil Aviation Security Rules, 67 Fed. Reg. 8340, 8344 (Feb. 22, 2002) (to be codified at 49 C.F.R. pt. 1540) (emphasis added). Indeed, TSA defines "sterile area" as that "portion of an airport … that provides passengers access to boarding aircraft and *to which the access generally is controlled by TSA* … through the screening of *persons* and property." 49 C.F.R. § 1540.5 (emphasis added).

TSA's regulations furthered the intent of Congress to address in ATSA the most obvious vulnerability laid bare by the 9/11 terrorist attacks. As Senator Kerry explained:

> [I]t is somewhat extraordinary that so many weeks after the events of September 11, in the immediate days thereafter, almost all of the relevant personnel within the aviation industry - the people who fly the planes, the screeners, the people at the airports responsible for security, the flight attendants - all of them came forward and said we need a Federal system with Federal employees and Federal standards that guarantees the safety of our aircraft access and our airways.

147 Cong. Rec. S10,437 (Oct. 10, 2001). Senator Kerry further extolled "the virtue of having this national system of employees who are accountable to one standard, accountable across the country to one system, and who work with an

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

*esprit de corps* and with an expertise that provides those people flying on our

aircraft the sense of safety they both want and deserve." 147 Cong. Rec. S10,438

(Oct. 10, 2001).

Based on these goals, Congress:

> agreed on a bipartisan and bicameral basis to "federalize" airport screeners . . . Federalization of the screening process is a necessary step in strengthening the flying public's faith in our Nation's air transport system . . . *The Federal Government will implement a program to place law enforcement officers at every single airport screening station in America.* These men and women will be public servants of the highest quality, having been subject to background checks, skill assessments and intensive training in classrooms and on the job.

147 Cong. Rec. S11,982 (Nov. 16, 2001) (emphasis added) (statement of Sen.

Rockefeller). With this federal workforce in place, "passengers will know that

they can count on the same level of security throughout the system, whether they

are boarding at LAX, Chicago O'Hare or the Portland, ME Jetport." 147 Cong.

Rec. S11,983 (statement of Sen. Snowe). At the heart of this new system is federal

screening. Congress intended to "hire Federal screeners at airports. They will be

managed and trained effectively and consistently. They will provide a level of

security the country deserves and needs." *Id*. (statement of Sen. Dorgan). The

Conference Report aptly summarized the Congressional purpose: "[t]he Conferees

SUBJECT TO PROTECTIVE ORDER IN CITY OF
BILLINGS V. TSA, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

expect that security functions at United States airports should become a Federal government responsibility." H.R. Rep. No. 107-296, at 54 (2001) (Conf. Rep.).

Congressional sentiment was also clear that this uniformly federal workforce would be devoted to screening workers as well as passengers. "All personnel who have anything to do with maintenance, cleaning, fueling, or catering must be screened." 147 Cong. Rec. S11,978 (Nov. 16, 2001) (statement by Sen. Burns). Or as Senator Rockefeller put it,

> [t]he legislation we approve today will require numerous new security features, including . . . screening of all passengers, baggage, and employees. This bill will revolutionize security at our airports and in our skies. *Every person and every bag, at every airport, big and small, will be screened by Federal law enforcement personnel, no exceptions.*

147 Cong. Rec. S11,982 (Nov. 16, 2001) (emphasis added).

Fifteen years after 9/11, Congress made clear that its commitment to federal screening had not changed. When it enacted the 2016 Security Act, Congress left no doubt that, consistent with ATSA, aviation worker screening is part of the Federal government's comprehensive responsibility for screening individuals and property at airports. Congress required that FAA develop a plan for "random physical security inspections *conducted by TSA representatives*" of airport

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

workers, Pub. L. No. 114-190, § 3407(a)(3) (emphasis added), and provided that "the *Administrator shall expand the use of transportation security officers and inspectors*" to conduct such screenings. *Id.* at § 3407(b). This Congressional mandate carries out the recommendations in the 2015 ASAC Report: that TSA should "increase the frequency of random and unpredictable employee screening/inspection at airports," App. 1179, and that the Department of Homeland Security should "immediately shift existing resources, as needed, to expand the TSA's random employee screening/inspection program." App. 1187. Shortly following the enactment of the 2016 Security Act, the Government Accountability Office reported that TSA "increased the frequency of physical inspections for aviation workers" and "plan[ned] to incorporate ATLAS into airports nationwide," demonstrating that TSA understood that the obligation to conduct aviation worker screening remained with the agency. App. 1310.

TSA also has acknowledged to this Court that the 2016 Security Act reinforced TSA's obligation to screen all persons entering the sterile area, including airport workers. As TSA explained,

> Congress has directed TSA to reinforce existing procedures by 'expand[ing] the use of transportation *security officers* . . . to conduct enhanced, random and unpredictable . . . inspections of airport workers' within

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

> the sterile area . . .TSA is working with airport operators, airline operators and state authorities to implement this mandate.

Addendum 32-33 (Public Redacted Brief For Respondent Transportation Security Administration in *Bonacci v. Transportation Security Administration*) (emphasis added).

TSA's approach to aviation worker screening, however, has veered sharply from this Congressional mandate. Even after Congress enacted the 2016 Security Act, TSA published Information Circulars recommending that airport operators expand their role in airport worker inspections. *E.g.,* App. 1212. Then, in 2020, TSA issued the proposed National Amendment, mandating that visual inspection was no longer sufficient, App. 598, requiring physical or equipment assisted searches of workers and their property, App. 598, and placing the burden of aviation worker screening entirely on airport operators. App. 592, 734-735.

In denying the Airport Petitioners' Petitions for Reconsideration, TSA ignored the express statutory and regulatory provisions that place the obligation to conduct screening of all persons, including aviation workers, on TSA employees. Instead, TSA asserted that airport security is a "cooperative" endeavor, citing to statutes, regulations and security directives that have nothing to do with screening

SUBJECT TO PROTECTIVE ORDER IN CITY OF BILLINGS V. TSA, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

32

individuals and property entering the secure and sterile areas of airports.  App.

881-882.  The authorities TSA cited involve an airport operator's general

responsibility to help ensure secured-area access control (49 U.S.C. §

44903(g)(2)(A)); to help prevent unauthorized access to the secured area and the

Air Operations Area ("AOA") (49 C.F.R. §§ 1542.201, 1542.203, 1542.205,

1542.207); and to conduct random "inspections" of employees who hold badges to

access the Security Identification Display Area ("SIDA") (Security Directive 1542-

18-01D).  Notably, none of those authorities refer to "screening" persons and

property in the manner that TSA screens individuals entering the secure and sterile

areas.

TSA also asserted in its denial letters that ATSA directed TSA to issue

regulations requiring the "screening or inspection of all individuals, goods,

property, vehicles, and other equipment before entry into a secured area of an

airport" and to "prescribe specific requirements for such screening and inspection

that will assure at least the same level of protection as will result from screening of

passengers and their baggage."  App. 1004 (citing 49 U.S.C. § 44903(h)(4)(A),

(B)).  But the statute does not state that airport operators shall conduct such

screening, and TSA has not interpreted it that way.  As explained above, TSA's

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR
PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW",
AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR
OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT
AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

own regulations promulgated shortly after ATSA provide that TSA has the responsibility for screening all individuals, not just passengers, entering the secured or sterile areas of an airport. *Supra* pp. 27-28.

In its denial letters, TSA also misread the 2016 Security Act, arguing that the Act placed an obligation on airport operators to conduct aviation worker screening, because it instructs TSA to "conduct a review of airports that have implemented additional airport worker screening or perimeter security to improve airport security" and "identify best practices for additional access control and airport worker security at airports." App. 885. But the fact that Congress instructed TSA to review procedures at airports that had voluntarily engaged in aviation worker screening or other enhanced security measures does not alter the statutory requirement that the "random physical security inspections" of airport workers shall be "*conducted by TSA representatives*." Pub. L. No. 114-190, § 3407(a)(3) (emphasis added). Nothing in the text of the 2016 Security Act suggests that airport employees or contractors will conduct the screening. Even a deferential interpretation of Congress' placement of security responsibilities on TSA does not allow TSA to ignore Congress' specific direction that *TSA representatives* will conduct the random screening of aviation workers. *See Chevron, U.S.A., Inc. v.*

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

*Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43 (1984) (if the "intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress").

TSA's denial letters also rely on the 2018 TSA Modernization Act to justify the National Amendment, *see, e.g.,* App. 886, but the 2018 Act does not alter the statutory requirement that TSA employees must conduct worker screening. In fact, the Act emphasizes that the worker inspections shall be "consistent" with the 2016 Security Act, and that the Administrator shall ensure that "random employee physical inspection efforts" are "TSA-led." TSA Modernization Act, Pub. L. No. 115-254, tit. I, § 1934, 132 Stat. 3186, 3573 (2018). Curiously, TSA's denial letters also rely on language in the 2018 Act requiring that TSA perform a cost-benefit analysis of the "shared cost and feasibility to airports, airlines and TSA of implementing enhanced employee inspection measures at all access points between non-secured areas and secured areas," *see, e.g.,* App. 874, arguing that this means that airports and TSA "share" employee inspection obligations. But the record demonstrates that TSA did *not* conduct the required cost-benefit analysis, *see, e.g.,* App. 675, and that TSA, as opposed to sharing responsibility for worker screening, has retained *no* responsibility for it whatsoever. *See, e.g.,* App. 592, 734, 741.

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

35

Moreover, the "shared cost" referenced in the statute hardly reflects the financial consequences of the National Amendment: TSA plans to devote $16.2 million to audit and enforce airports' efforts to comply with the National Amendment, and just $300,000 over five years to "oversight and support." App. 659, 679, 723. As TSA's cost analyses expressly reflect, its commitment to "oversight and support" is "0.1%" of the National Amendment's total cost. App. 659, 679, 723.

TSA cannot justify on security grounds its decision to disregard the express intent of Congress in ATSA and in the 2016 Security Act to create a comprehensive, federal airport screening system for all individuals, including aviation workers. Nor can TSA claim that Congress intended TSA to safeguard passengers from harm by screening passengers and non-passengers, but only until it became too expensive. The members of Congress who enacted ATSA spoke loudly on that point. "[O]nly by federalizing those screeners can the American public be assured that 'cost-cutting' will not occur to the detriment of their safety." 147 Cong. Rec. S10,803 (Oct. 17, 2001) (statement by Sen. Byrd). "Security in this bill comes first, and it will *forever more* come first without being driven by cost concerns." 147 Cong. Rec. H8302 (Nov. 16, 2001) (statement by Rep. DeFazio).

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

36

## II. The National Amendment is Arbitrary and Capricious

TSA has repeatedly pointed to security threats to justify the need for screening aviation workers, but the administrative record is devoid of anything resembling a rationale for addressing those threats by shifting the responsibility to screening aviation workers from TSA to airport operators. When airport operators voiced concern that the Amendment would risk degrading security and subject airports to potentially catastrophic liability, TSA's responses ranged from non-answers to dismissals. TSA's failure to justify placing responsibility for worker screening on airports and to address consequential issues raised by airport operators renders the Amendment arbitrary and capricious.

### A. TSA Provided No Explanation For Its Decision To Shift Virtually All Responsibility For Aviation Worker Screening To Airport Operators.

"An agency must 'articulate a satisfactory explanation for its action including a rational connection between the facts found and the choices made,'" and where "the record lacks a reasonable justification for the [agency decision] and any comparative analysis whatsoever, [an agency's] explanation is arbitrary and capricious." *United Steel v. Mine Safety and Health Admin.*, 925 F.3d 1279, 1285 (D.C. Cir. 2019); *Select Specialty Hospital-Bloomington, Inc. v. Burwell*, 757 F.3d 308, 312 (D.C. Cir. 2014) (" '[t]here are cases where an agency's failure to state its

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

SENSITIVE SECURITY INFORMATION / UNDER SEAL

reasoning or to adopt an intelligible decisional standard is so glaring that we can declare with confidence that the agency action was arbitrary and capricious'" (quoting *Checkosky v. SEC*, 23 F.3d 452, 463 (D.C. Cir. 1994), superseded on other grounds *Marrie v. SEC*, 374 F.3d 1196 (D.C. Cir. 2004).

The administrative record is replete with TSA's assertions that aviation workers should be subject to security screening. *See, e.g.*, App. 54, 508-509. Absent from the record, however, is any discussion of how this objective is served by assigning responsibility for worker screening to airports, and TSA evidently never compared the effectiveness of this approach to alternatives, or explained why it ignored ASAC's recommendation that TSA conduct worker screenings itself. *See Select Specialty Hospital*, 757 F.3d at 312-13 (even where the court can discern the "guiding principles motivating" an agency action, if the court "cannot discern how the [agency's] decision serves these…principles" the agency's decision is arbitrary and capricious).

Instead, TSA chose to delegate responsibility for worker screening, including the development of training protocols, screening procedures and prohibited items lists, to individual airport operators across the country. *E.g.* App. 491 (audio file at times 1:12:00 and 1:18:10), 734-735, 740-741, 1154, 1172-1173.

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

This diffusion of standards and control is precisely the situation Congress sought to avoid when it passed ATSA in the aftermath of 9/11. *See* 147 Cong. Rec. S10,438 (Oct. 10, 2001) (Senator Kerry describing goal of a "*national system* of employees who are accountable to *one standard*, accountable across the country to *one system*") (emphasis added). For this reason and others, airports and industry organizations have repeatedly voiced their concerns that shifting the responsibility for worker screening to airports risks degrading security. *See, e.g.*, App. 754-757, 830-831, 1244, 1253, 1262. TSA has even acknowledged that its own screening operations are more extensive than those the Amendment requires, commenting "it's not really a fair comparison." App. 491 (audio file at time 1:31:40), 494 n.2.

The closest TSA comes to offering an explanation is the refrain "insider threat mitigation is a shared responsibility." *See, e.g.*, App. 733. But the existence of an insider threat, by itself, hardly reflects a basis for shifting worker screening responsibility from TSA, with its unique capabilities to identify and respond to terrorist threats, to airport operators. In effect, TSA contends that it has identified a serious problem, and wants to solve it by transferring to airports the responsibility to address it. *See Select Specialty Hospital¸* 757 F.3d at 312-13 (an agency must explain how its decision serves the principles motivating the

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

decision); *see United Steel*, 925 F.3d at 1285 (*"*an agency must 'articulate…a rational connection between the facts found and the choice made'") (quoting *State Farm*, 463 U.S. at 43)).

TSA has also provided no reasonable justification for requiring airports to cover the cost of screening aviation workers, nor has it conducted a full cost-benefit analysis of the Amendment despite being directed to do so by Congress through the Department of Homeland Security Appropriations Act of 2021. Consolidated Appropriations Act, 2021, Pub. L. No. 116-260 § 219, 134 Stat. 1182, 1458 (2020). TSA's Policy, Plans, and Engagement (PPE) Economic Analysis Branch (EAB) estimated that compliance with the Amendment will cost airports between $302 and 348 million within the first five years of implementation, while TSA expects its own expenses to amount to only $16.5 million. App. 659, 679, 715. TSA attempts to justify this allocation of cost by asserting "screening requirements…are necessary," App. 513, but this is a conclusory statement about the need to screen workers, not a rationale for requiring airports to cover the cost. *See Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) (when an agency explains its decision, "conclusory statements will not do"); *United Steel*, 925 F.3d at 1285.

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

40

To the extent that the administrative record reveals any rationale for TSA's decision, it suggests that TSA wants airports to cover the cost of worker screening simply because TSA cannot afford to. TSA claims the task "cannot be sustained by TSA without having an impact on other screening operations." App. 733. However, the record contains no evidence that TSA ever estimated what it would cost the agency to take full responsibility for implementing and overseeing aviation worker screening, nor is there any evidence TSA seriously contemplated undertaking this role. *See National Shooting Sports Foundation, Inc. v. Jones*, 716 F.3d 200, 215 (D.C. Cir. 2013) (an agency must consider "significant and viable" and "reasonably obvious alternative[s]" (quoting *City of Brookings Mun. Tel Co. v. FCC*, 822 F.2d 1153, 1169 (D.C. Cir. 1987); *Natural Res. Def. Counsel, Inc. v. SEC*, 606 F.2d 1031, 1053 (D.C. Cir. 1979)); *see United Steel*, 925 F.3d at 1285 (a lack of any comparative analysis in the record suggests an agency action is arbitrary and capricious).

TSA's inability to fund the entire cost of aviation worker screening is no justification for forcing airport operators to fund it instead. Indeed, as the legislative history of ATSA makes abundantly clear, Congress did not intend TSA's decisions regarding airport security protocols to be "driven by cost

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

concerns." 147 Cong. Rec. H8302 (Nov. 16, 2001) (statement by Rep. DeFazio). *Supra* p. 36. In assigning responsibility for worker screening to airport operators out of cost concerns, TSA relied on factors Congress did not intend for it to consider, rendering the Amendment arbitrary and capricious. *See State Farm*, 463 U.S. at 43 ("an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider"). The solution to TSA's lack of funding for carrying out its statutory duties lies with Congress, not in requiring local governments and public authorities to cover the costs of a federal program.

B.    <u>TSA Failed To Address Critical Aspects of the Problem such as Ensuring Effective Security and Protecting Airport Operators from Potentially Massive Liabilities.</u>

In deciding whether an agency action was reasonable, the Court must determine "whether the agency…failed to consider an important aspect of the problem it faces." *Humane Society of United States v. Zinke*, 865 F.3d 585, 605 (D.C. Cir. 2017) (quoting *SecurityPoint Holdings, Inc. v. Transportation Sec. Admin.*, 769 F.3d 1184, 1187 (D.C. Cir. 2014)). An agency's decision is arbitrary and capricious if "an important factor…was left out of the analysis all together." *Humane Society*, 865 F.3d at 606; *Kentucky Mun. Energy Agency v. FERC*, 45

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

~~WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.~~

42

F.4th 162, 177 (D.C. Cir. 2022) ("agencies cannot disregard important aspects of a problem before them"). In issuing the National Amendment, TSA failed even to consider whether TSA itself is in the best position to administer worker screening, and whether the National Amendment imposes potentially catastrophic liabilities on airport operators. The failure to address these important factors renders TSA's decision arbitrary and capricious. *See id.*

Industry comments on the proposed National Amendment note that it is TSA, and not individual airports, which is best positioned to hire and train personnel, access and disseminate intelligence on the latest threats, and keep operating procedures updated and standardized. *See, e.g.*, App. 776, 830-831, 1244, 1261-1262. TSA never directly addressed these comments, and the administrative record contains nothing resembling a cost-benefit analysis, nor is there any documentation of internal discussion regarding which entities could most effectively conduct worker screening. Instead, TSA merely asserted that the Amendment "serves a vital aviation security purpose in countering insider threats, and TSA considered its costs and benefits prior to issuance." App. 887. TSA thus ignored significant concerns raised in industry comments. *See Assoc. of Private Sector Colleges and Universities v. Duncan*, 681 F.3d 427, 441 (D.C. Cir. 2012)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

(agency action is arbitrary and capricious if the agency "failed to address significant comments").

In addition to its ability to access and disseminate intelligence on the latest threats, TSA hires, trains, and oversees large numbers of federal screeners, meaning that TSA is uniquely capable of rapidly adjusting screening procedures and training in response to emerging security concerns. App. 830-831, 984. Yet in inexplicably turning full responsibility for aviation worker screening over to airports—while offering virtually no guidance, training, or financial assistance, App. 733-736, 740-741, 746. TSA did not address the disparity between TSA's capabilities and those of airport operators, or the concern that delegating worker screening to airports risks degrading airport security. *See Kentucky Mun. Energy Agency*, 45 F.4th at 177 ("agencies cannot disregard important aspects of a problem before them").

There is also no indication that TSA considered industry concerns regarding the mandated use of TSA's Aviation Worker Screening Tool (AWST). App. 752, 982. Using a formula based on arbitrary assumptions, including that all Secured Area ID Media Holders are authorized to use all access points, *see, e.g.*, App. 999-1001, the AWST dictates significantly higher weekly screening hour quotas for

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

airports than they had previously devoted to inspections, *see supra* p. 14, and even requires airport operators to screen TSA's own employees. App. 982, 1000. This additional burden leaves airports with no choice but to hire thousands of new entry-level employees or contractors nationwide to conduct worker screening, which by itself creates significant new vulnerabilities. Although airport operators raised these concerns, *see, e.g.*, App. 982, there is no evidence TSA gave them consideration. *See Assoc. of Private Sector Colleges and Universities*, 681 F.3d at 441 (agency action is arbitrary and capricious if the agency "failed to address significant comments").

The Airport Petitioners also expressed concern that the Amendment would impose an unacceptable risk of liability on airport operators in the event of a security breach or terrorist attack. *See, e.g.,* App. 598, 610, 749, 758-759. Massport's experience in the wake of 9/11 is illustrative of this risk. *See infra* pp. 49-50. But when airport operators raised concerns regarding whether compliance with the Amendment would expose them to liability, TSA simply responded, without any reference to the virtually complete shift in responsibility for worker screening, that "[a]irports should have current liability protection that would be applicable. TSA will not provide a legal opinion on the issue of legal liability and

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

insurability." App. 734. And when airports commenting on an earlier version of the Amendment noted that TSA's lack of training and oversight of worker screening could expose airports to liability, TSA curtly replied that airports should "take that into account when developing aviation worker standard operating procedures." App. 640; *see also*, *e.g.*, App. 610 ("TSA recommends that airport operators consider any liability concerns associated with screening"). These responses suggest TSA never grasped the gravity of the liability issue, much less gave it any serious consideration in formulating the Amendment. "Because the TSA 'failed to consider an important aspect of the problem' before it, its decision must be set aside as arbitrary and capricious." *SecurityPoint Holdings*, 769 F.3d at 1189 (quoting *State Farm*, 463 U.S. at 43); *Humane Society*, 865 F.3d at 606 (where an important factor is left out of an agency's analysis, the resulting decision is arbitrary and capricious); *Kentucky Mun. Energy*, 45 F.4th at 177 (where an agency decision disregards an "important aspect[] of the problem before" it, the decision is arbitrary and capricious).

## III.    The National Amendment Unconstitutionally Commandeers Local Public Officials to Enforce Federal Security Measures

On top of its other defects, the National Amendment is a clear violation of the Tenth Amendment's proscription against the federal government's attempts to

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

shift the burden of Federal programs onto state or local officials. The Supreme

Court's opinion in *Printz v. United States*, 521 U.S. 898 (1997), is squarely on

point. In that case, County Sheriffs in Montana challenged on Tenth Amendment

grounds the Brady Bill's command that local law enforcement conduct background

checks on handgun purchasers. *Id.* at 902. The Court's opinion was emphatic. It

held, under the Tenth Amendment, that "the Federal Government may neither issue

directives requiring the States to address particular problems, nor command the

States' officers, or those of their political subdivisions, to administer or enforce a

federal regulatory program." *Id*. at 935. *See Murphy v. National Collegiate*

*Athletic Association*, 584 U.S. 453, 470-474 (2018). In language especially

pertinent here, the Court noted that, if the federal government had the power to

enlist local officials to implement federal regulatory programs, it could "take credit

for 'solving' problems without having to ask [its] constituents to pay for the

solutions with higher federal taxes." *Printz*, 521 U.S at 930. Assigning

responsibility for implementation to state officials unfairly puts the states "in the

position of taking the blame for [the federal program's] burdensomeness and for its

defects." *Id.*

SUBJECT TO PROTECTIVE ORDER IN CITY OF
BILLINGS V. TSA, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR
PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW",
AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR
OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT
AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

The National Amendment unconstitutionally commandeers local officials to implement a federal regulatory program, and enables TSA to balance its books on the backs of local airport operators. TSA estimates that the implementation of the worker screening program will cost somewhere between $318 million and $368 million over five years. App. 659, 723. Though it describes worker screening as a collaborative, shared effort, App. 773, the National Amendment would place approximately 95% of that cost on local government. In fact, TSA's contribution, other than the approximately $16 million it will spend to audit airport operators' compliance with the National Amendment, is a mere $300,000 spread over five years, for "oversight and support". App. 659, 679, 723. This shift in financial burden, by itself, violates one of the core principles behind the "anticommandeering" doctrine.

> If Congress enacts a law and requires enforcement by the Executive Branch, it must appropriate the funds needed to administer the program. It is pressured to weigh the expected benefits of the program against its costs. But if Congress can compel the states to enact and enforce its program, Congress need not engage in any such analysis.

*Murphy,* 584 U.S. at 473.

But beyond shifting this enormous expense to local government, there is a vastly more serious consequence. Should an authorized individual be wrongly

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

excluded from the secured area or, worse yet, a wrongdoer gain access – the local airport operator is put "in the position of taking the blame." *Printz*, 521 U.S. at 930. As the Court described in *Printz*, under the provision of the Brady Bill requiring local law enforcement to perform background checks on handgun purchasers, "it will be [local police chiefs], not some federal official who stands between the gun purchaser and immediate possession of his gun. And it will likely be [local police chiefs], not some federal official, who will be blamed for any error." *Id.*

Along with the blame comes potential liability. After the 9/11 terrorist attacks, plaintiffs sued Massport, the owner and operator of Boston Logan International Airport where the two aircraft destined for New York began their flights, for billions of dollars. *E.g.*, *Bavis v. United Airlines et al.*; *World Trade Center Properties, LLC v. American Airlines, Inc. et al.*, consolidated with multiple other matters as *In re: September 11 Litigation*, 21 MC 101 (AKH) (S.D.N.Y.). One plaintiff sued Massport's Chief Executive Officer and Director of Security in their individual capacities. *Lewin v. AMR Corp. et al.*, 03-CV-6726 (AKH) (S.D.N.Y.). Without a congressionally-imposed liability cap, *see* Aviation and Transportation Security Act, Pub. L. 107-71, § 201(b), 115 Stat. 597 (2001),

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

Massport would have risked financial ruin.  Massport was ultimately successful in defending that litigation because, as the federal court found, passenger screening was a responsibility solely vested with air carriers or their private security contractors.  Addendum at 80.  As the Court ruled, "Massport, as the airport operator, is not involved with this."  *Id*. at 86.  But according to TSA, when  the National Amendment takes effect, "the airport is responsible for implementing and conducting screening."  App. 734.  No airport operator should bear the potential liability arising from TSA's abdication of this role.

TSA did not attempt, in its Disposition of Comments and answers to FAQ's, to contest airports' concerns about liability.  In fact, TSA admitted that "the nature of the requirements [in the National Amendment] may subject airports to liability."  App 640.  TSA did offer, unhelpfully, that "[a]irports should have current liability protection that would be applicable," App. 734, but declined to specify what that "liability protection" would be and refused to "provide a legal opinion on the issue of legal liability and insurability."  *Id.*

TSA did suggest, for the first time in its denials of the petitions for reconsideration, that the Safety Act, 6 U.S.C. § 441 – 444, provides protection for liability in the event of a terrorist attack.  App. 892-893.  The question of whether

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

the Safety Act, which provides protection for the sellers of qualified security technology, *see* 6 C.F.R. 25.2, could provide liability protection for airport operators subject to the National Amendment is novel and untested, and there is little chance that the Safety Act would deter plaintiffs' counsel from filing suit against an airport operator following a terrorist attack. As far as insurance is concerned, no airport could purchase limits sufficient to cover the billions of dollars of damages potentially at issue.

TSA asserted in its denial letters that, irrespective of the financial or liability burden imposed on airport operators, the Tenth Amendment does not apply because the National Amendment imposes these burdens on all airport operators, and that some of these airport operators may not be instrumentalities of "state or local government." App. 891-892. TSA fails to identify any of the 165 Category X, I or II airports to which the National Amendment is directed which is not owned by a state or local government, because there are none.[3]

---

[3] TSA points out that the National Amendment also applies to "private airlines with exclusive area agreements." App. 892. This would be a miniscule amount of worker screening as compared to the screening performed by airport operators. In fact, the costs of such screening are not even referenced in the various cost analyses conducted by TSA. App. 656, 675, 720.

**SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)**

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

TSA also argues in its denial letters that airports operate as commercial entities, not in their sovereign capacity, and that therefore the Tenth Amendment is inapplicable.  App. 891.  This is also incorrect.  *E.g., E.W. Wiggins Airways, Inc. v. Massachusetts Port Authority*, 362 F. 2d 52, 55 (1st Cir. 1966) (contention that operation of airport is "purely proprietary" and akin to "conducting a private business has no merit."); *see, e.g., Deak-Perera Hawaii, Inc. v. Dept of Transp., State of Hawaii*, 553 F. Supp. 976, 985 (D. Hawaii) ("actions taken to manage and develop the airport system must initially be viewed as acts of the state in its sovereign capacity for the public good.").  This is especially so where the activity involves a security function, a distinctly governmental activity.

Finally, TSA claims that the Tenth Amendment does not apply here because the federal directive does not seek to "control or influence the manner in which the states regulate private parties."  App. 892, *quoting South Carolina v. Baker,* 485 U.S. 505, 512 (1988).  But that is exactly what the National Amendment does: it "controls or influences the manner" in which local or state airport operators permit private employees at airports to access secured areas.  They may only do so after being subject to random screening by the airport operators.

**SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)**

~~WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.~~

52

## IV. The National Amendment Violates the Public Notice and Comment Requirements of the APA

The APA "generally require[s] an agency to publish notice of a proposed rule in the Federal Register and to solicit and consider public comments upon its proposal." *Electronics Information Privacy Center* v. *United States Department of Homeland Sec.*, 653 F.3d 1, 5 (D.C. Cir. 2011) (hereinafter "EIPC") (citing 5 U.S.C. §§ 553(b) and (c)). The National Amendment is the kind of "rule" that should have been the subject of public notice and comment before it was adopted by TSA: it is a binding statement of general application that was used by TSA to implement a new policy. *See* 5 U.S.C. § 551(4) (defining "rule" to mean ". . . an agency statement of general or particular applicability and future effect designed to implement, interpret or prescribe law or policy"). The APA's public rulemaking requirements apply when agency action "create[s] new rights or duties," *Orengo Caraballo v. Reich*, 11 F.3d 186, 195 (D.C. Cir. 1993), or "carries 'the force and effect of law.'" *Paralyzed Veterans of Am. v. D.C. Arena L.P.*, 117 F.3d 579, 588 (D.C. Cir. 1997). (quoting *American Min. Congress* v. *Mine Safety & Health Admin.*, 995 F.2d 1106, 1109 (D.C. Cir. 1993)). The National Amendment imposes new, burdensome, and binding obligations on airport operators throughout the country and meets these tests.

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

The D.C. Circuit Court of Appeals has already rejected a similar effort by TSA to skip the most significant step in the required regulatory process, namely "*public* rule making proceedings," 5 U.S.C. § 553(b)(1) providing all "interested persons an opportunity to participate in the rule making," 5 U.S.C. § 553(c), when TSA decided, without an opportunity for public comment, to screen passengers with advanced imaging technology rather than magnetometers. *See EIPC,* 653 F.3d at 8 (quoting 5 U.S.C. § 553(c)). TSA made a similar mis-step here: it only gave the airport operators and air carriers the chance to submit written comments. But TSA cannot avoid the APA's requirement for "public rule making proceedings" by making a unilateral assessment of who might have relevant comments, and excluding from its rulemaking process the travelling public (among others), which is undeniably interested in the safety and security of airports. This is undoubtedly why the House Appropriations Committee "urge[d] TSA to rescind the current ASP Amendment and solicit a formal round of notice and comment to understand the full financial and operational impacts of this proposal on airports and the expected benefits to aviation security." H. R. Rep. No. 118-123, at 43 (2023).

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

54

The White House has also recognized the importance of soliciting input from those who are likely to be affected by a regulation.  More than a decade ago, the White House underscored the need for an "open exchange of information and perspectives among State, local, and tribal officials, experts in relevant disciplines, affected stakeholders in the private sector, and the public as a whole" in the regulatory process.  Exec. Order No. 13,563, 76 Fed. Reg. 3821-3823 (Jan. 21, 2011).  More recently, the White House reaffirmed this principle, stating that public involvement in the regulatory process is "crucial" because it leads to "more effective and equitable regulations; greater trust in government and democratic accountability; and increased public understanding of the regulatory process."  Off. Of Mgmt. & Budget, Exec. Off. of the President, Memorandum on Broadening Public Participation and Community Engagement in the Regulatory Process, (July 19, 2023), https://www.whitehouse.gov/wp-content/uploads/2023/07/Broadening-Public-Participation-and-Community-Engagement-in-the-Regulatory-Process.pdf.

Nor can TSA rely on 49 C.F.R. § 1542.105(c), which grants to "designated official[s]," typically the local FSD, the authority to amend an Airport Security Program ("ASP").  This rule authorizes an FSD to change an airport's individually tailored ASP, but there is nothing in this rule that can fairly be read to authorize a

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

"National Amendment" to ASPs, mandated by the Administrator rather than an FSD, that imposes new industry-wide obligations. Moreover, § 1542.105(c) only enables an ASP amendment "[i]f safety and the public interest require." As explained above, the administrative record reflects no safety or public interest advanced by shifting aviation worker screening obligations to airports. *See supra* pp. 37-46.

## V. The National Amendment Requires Local Montana Officials to Engage in Conduct Which Violates State Constitutional Rights to Privacy

Two Airport Petitioners, the City of Billings and Flathead Municipal Airport Authority (the owner and operator of Glacier Park International Airport), also sought reconsideration of the National Amendment on the ground that it requires local officials to engage in conduct that violates the Montana Constitution. App. 783, 811. Though federal TSA agents conducting worker screening would be restricted by the privacy protections provided by the Fourth Amendment, state and local airport officials would also be bound by their own state constitutions, and the Montana Constitution provides a substantially greater right to privacy than does the United States Constitution. *State v. Malkuch*, 336 Mont. 219, 223 (2007); *State v. Hamilton*, 314 Mont. 507, 511 (2003); *State v. Scheetz*, 286 Mont. 41, 47 (1997).

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

56

According to Article II, Section 10 of the Montana Constitution, "[t]he right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest." Montana state courts have therefore given priority time and time again to the "expectation of privacy . . . protect[ed] so jealously in Montana." *Hamilton,* 314 Mont. at 515. In particular, "the range of warrantless searches which may be lawfully conducted under the Montana Constitution is narrower than the corresponding range of searches that may be lawfully conducted pursuant to the federal Fourth Amendment." *State v. Goetz*, 345 Mont. 421, 427 (2008); *State v. Thomas*, 401 Mont. 175, 180 (2020) (same).

Montana courts have also concluded that "few things are more inherently private than the contents of a wallet or purse." *Hamilton*, 314 Mont. at 514, and the same would be true of any briefcase or other object containing "the personal effects" of an airport worker. Accordingly, the Montana Constitution "does not allow a general search of a benign object based on . . . a remote possibility of harm." *Id*. at 517. Instead, searches of personal property without "an objectively reasonable belief" that the property "posed some real threat to safety" are deemed unlawful. *Id.* at 518.

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

~~WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.~~

57

As a result, state officials in Montana risk liability if required to comply with the National Amendment, including mandatory searches of individuals, their clothing and their personal property.  Except in extraordinary circumstances, individuals working at Billings-Logan International Airport or Glacier Park International Airport, who may be well-known to their co-workers conducting the screening, would not present any "objectively reasonable" basis on which the screener could determine that they or their personal property "posed some real threat to safety." *Hamilton*, 314 Mont. at 518.  Without any such basis, a Montana Court could well conclude that state officials conducting these searches were doing so in violation of the enhanced privacy protections in the state constitution.  This is especially so given that the search required must be "physical or technology based."  App. 598.  *Cf. State v. Scheetz*, 286 Mont. at 51 (canine sniff of checked luggage permissible, as distinguished from search of opened suitcase, which "might subject the owner . . . to significant embarrassment and inconvenience.").

Montana is not the only state whose constitution provides greater privacy protections than the federal constitution.  The Supreme Court in the state of Washington, for example, has "a long history of striking down exploratory searches not based on at least reasonable suspicion."  *York v. Wahkiakum School*

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

*District No. 200*, 178 P.3d 995, 1005 (Wash. 2008) (en banc) (striking down random drug testing of student athletes based on state constitution). Similarly, the Colorado Supreme Court has held, under the Colorado Constitution, that a sniff from a dog trained to detect marijuana must be based on probable cause that "contraband or evidence of a crime is present." *People v. McKnight*, 446 P.3d 397, 405-412 (Colo. 2019). In short, TSA's transfer of worker screening responsibilities to state and local officials subjects the process to the inconsistencies between the different ways state laws treat random searches and privacy rights.

TSA relies heavily on precedent under the Fourth Amendment, claiming that because physical searches of passengers and their property in secure areas of the airport are permissible under the federal constitution, there must be a diminished expectation of privacy cognizable under the Montana constitution. App. 934. But whether the subjects of a search by Montana officials have a legitimate expectation of privacy is based on Montana law. *Hamilton*, 314 Mont. at 513; *see McKelvey v. State*, 474 P.3d 16, 26-27 (Alaska 2020) ("Alaska law is more likely to recognize that an expectation of privacy is reasonable, given [Alaska's] express constitutional protection for the right of privacy"). TSA's argument, that the Fourth Amendment

**SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)**

**WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.**

59

sets the ceiling for privacy expectation, could eviscerate state constitutional privacy protections which, like the Montana constitution, provide enhanced protection from searches by state and local officials.

## VI. Petitioner Airports Council International-North America has Standing to Challenge the National Amendment in the Administrative Process Before TSA and in this Court

ACI-NA has standing to challenge the National Amendment in this Court, and similarly had standing to file a petition for reconsideration of the National Amendment in the administrative process before TSA. ACI-NA timely filed its Petition for Reconsideration to TSA on August 4, 2023. App. 827. TSA denied ACI-NA's Petition for Reconsideration on September 1, 2023, App. 936, and ACI-NA timely joined in the petition for review to this Court on October 20, 2023. Dkt. 2023213

As described in ACI-NA's Petition for Reconsideration:

> ACI-NA is the voice of North American Airports, representing local, regional, and state government bodies that own and operate commercial airports in the United States and Canada. It is ACI-NA's mission to advocate policies, including aviation safety and security policies, and to provide services that strengthen commercial airports' ability to serve their passengers, customers and communities. Our membership is comprised of more than 300 airports operating in the United States . . .

SUBJECT TO PROTECTIVE ORDER IN CITY OF
BILLINGS V. TSA, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

App. 827.  ACI-NA comfortably meets the test for representational standing under Article III of the United States Constitution, as described by this Court.  *Advanced Energy United, Inc. v. Federal Energy Regulatory Commission*, 82 F.4th 1095 at 1107 (D.C. Cir. 2023).  To establish representational standing, "1) at least one of [ACI-NA's] members would have standing to sue in [its] own right; 2) the interest [ACI-NA] seek[s] to protect is germane to [its] purpose; and 3) neither the claim asserted nor the relief requested requires the member to participate in the lawsuit." *Id., quoting Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 182 (D.C. Cir. 2017).  ACI-NA's members not only have standing to sue in their own right, but many have, in fact, joined in the petition for review.  The interest ACI-NA seeks to protect, including the safety of our nation's airports, "is germane to its purpose," and the relief sought, vacating the National Amendment, does not require its members to participate in the lawsuit.

ACI-NA also urges the Court to resolve the question of ACI-NA's standing to petition TSA for reconsideration of the National Amendment at the administrative level.  In response to ACI-NA's Petition for Reconsideration, App. 827, TSA asserted, without citing any statutory provision or precedential authority, that the "National Amendment does not apply to associations or similar entities

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

that do not operate under a TSA-approved security program," and that the relevant provisions of 49 C.F.R. § 1542.105 "provide no basis for an association to submit a petition for reconsideration."  App. 941.

However, as stated earlier, the proposed National Amendment is a binding statement of general application used by TSA to implement a new policy, and as such should have been promulgated pursuant to the requirements of the APA.  *See supra* pp. 53-56.  TSA therefore cannot rely on 49 C.F.R. §§ 1542.105(c) or (d) to claim that ACI-NA lacked standing to file a petition for reconsideration of the National Amendment, because those regulations are inapplicable.  Under the APA, "a party entitled to judicial review of agency action clearly qualifies as an 'interested person' who normally may intervene in the administrative proceeding" so long as such participation dovetails with "the orderly conduct of public business."  *Nichols v. Bd. of Trustees of Asbestos Workers Local 24 Pension Plan*, 835 F.2d 881, 896-97 (D.C. Cir. 1987) (quoting 5 U.S.C. § 555(b)).  Because ACI-NA easily meets the test for representational standing articulated by this Court, *see supra* pp.60-61, it qualifies as an "interested person" under the APA who is entitled to "intervene" by submitting a petition for reconsideration.  *See Nichols*, 835 F.2d at 896.

SUBJECT TO PROTECTIVE ORDER IN <u>CITY OF BILLINGS V. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

## CONCLUSION

For the foregoing reasons, the Airport Petitioners respectfully request this

Court to reverse the TSA's denial of the Airport Petitioners' Petitions for

Reconsideration and vacate the National Amendment.


The City of Billings *et al.*,

By their attorneys,


/s/   *Melissa C. Allison*
Melissa C. Allison
    mallison@andersonkreiger.com
David S. Mackey
    dmackey@andersonkreiger.com
Carlos R. Rosende
    crosende@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
T: 617.594.5940

March 1, 2024

SUBJECT TO PROTECTIVE ORDER IN CITY OF
BILLINGS V. TSA, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR
PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW",
AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR
OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT
AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

## CERTIFICATE OF COMPLIANCE

1.      This motion complies with the type-volume requirements of Federal Rules of Appellate Procedure 27(d)(2)(A) and Circuit Rule 27(a)(2) because the motion contains 12,549 words, as determined by the word-count function of Microsoft Word 365; and

2.      This motion complies with the typeface requirements of the Federal Rules of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

Dated:  March 1, 2024

/s/   *Melissa C. Allison*
Melissa C. Allison
   mallison@andersonkreiger.com
David S. Mackey
   dmackey@andersonkreiger.com
Carlos R. Rosende
   crosende@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
T: 617.594.5940

**SUBJECT TO PROTECTIVE ORDER IN CITY OF BILLINGS V. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**

**WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.**

## CERTIFICATE OF SERVICE

I hereby certify on March 1, 2024, I caused a true and correct copy of this motion to be electronically filed through the Court's Box.com File Repository and served on Respondents by electronic file share.

/s/   Melissa C. Allison
Melissa C. Allison
   mallison@andersonkreiger.com
David S. Mackey
   dmackey@andersonkreiger.com
Carlos R. Rosende
   crosende@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
T: 617.594.5940

SUBJECT TO PROTECTIVE ORDER IN CITY OF
BILLINGS V. TSA, Nos. 23-1290, 1328 (D.C. Cir.)

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.