SENSITIVE SECURITY INFORMATION / UNDER SEAL

**ORAL ARGUMENT NOT YET SCHEDULED**

No. 23-1290
Consolidated with No. 23-1328

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

CITY OF BILLINGS, CITY OF BISMARCK, CITY OF COLORADO SPRINGS, DANE COUNTY, FLATHEAD MUNICIPAL AIRPORT AUTHORITY, GREATER ASHEVILLE REGIONAL AIRPORT AUTHORITY, CITY AND BOROUGH OF JUNEAU, MASSACHUSETTS PORT AUTHORITY, METROPOLITAN AIRPORTS COMMISSION, MILWAUKEE COUNTY, OKLAHOMA CITY AIRPORT TRUST, CITY OF PHILADELPHIA, RALEIGH DURHAM AIRPORT AUTHORITY, CITY OF SAN JOSE, SPOKANE AIRPORT BOARD, and AIRPORTS COUNCIL INTERNATIONAL – NORTH AMERICA
*Petitioners,*

v.

TRANSPORTATION SECURITY ADMINISTRATION AND DAVID P. PEKOSKE, ADMINISTRATOR,
*Respondents.*

ON PETITION FOR REVIEW OF A DECISION
OF THE TRANSPORTATION SECURITY ADMINISTRATION

**REPLY IN SUPPORT OF MOTION
BY PETITIONERS CITY OF BILLINGS ET AL. FOR A STAY**

Melissa C. Allison
David S. Mackey
Carlos R. Rosende
Anderson & Kreiger LLP
50 Milk Street, 21st Floor
Boston, MA 02109
mallison@andersonkreiger.com
dmackey@andersonkreiger.com
crosende@andersonkreiger.com
T: 617.594.5940

*Counsel for Petitioners*

April 29, 2024

SUBJECT TO PROTECTIVE ORDER IN
City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

## INTRODUCTION

TSA's Opposition to the Airport Petitioners' motion for a stay ignores what is clear on the face of the administrative record: through the National Amendment, TSA has abdicated its Congressionally-mandated responsibility for aviation worker screening. TSA does not even attempt to reconcile the National Amendment with TSA's own regulations, or with its previous arguments to this Court about its statutory responsibilities to conduct worker screening. Even if, as TSA argues, the pertinent statutes impose a "shared" responsibility for worker screening – and they do not – TSA's decision to shift all responsibility to airports would be contrary to that interpretation.

The administrative record contains no support for the *post hoc* arguments TSA now makes: TSA failed to evaluate whether shifting responsibility for worker screening to airports responds to the "insider" risk; failed to address airports' liability concerns; and failed to seek public comment on a matter that implicates public safety. And the enormous, irreparable, $50-60 million start-up cost to the airport industry in year-one, plus the immeasurable cost to the industry of returning to the status quo if this Court rules in its favor, outweighs any burden on TSA continuing its decades-long role for a few more months.

SUBJECT TO PROTECTIVE ORDER IN
City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

## ARGUMENT

**I.     The Administrative Record Shows that TSA Has Abdicated its Responsibility for Worker Screening.**

The administrative record is crystal clear: the National Amendment places "the responsibility to screen aviation works [sic] at airports on the airport operator." Joint Appendix ("App.") 592. As TSA explained, "the airport is responsible for implementing and conducting screening." App. 734. "TSA will not provide training, nor will it prescribe how a search must be accomplished. The methods and training requirements must be developed and implemented by the airport." App. 741. TSA suggests that airports "*may* assume additional screening costs," Opposition ("Opp.") 31 (emphasis added), but by TSA's own calculation, the airport industry *will* incur massive screening costs of $302 million in the first five years. App. 723. Over that same period, TSA will spend only $300,000 (less than 0.1% of the cost of worker screening) for "oversight and support." *Id.* TSA does not "share" responsibility with airports under the National Amendment. TSA is walking away from the problem.

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

## II.   The Airport Petitioners Are Likely to Succeed on the Merits.

### A.   The National Amendment is Inconsistent with TSA's Own Interpretation of ATSA, TSA's Own Regulations, and Subsequent Congressional Action Mandating Enhanced, "TSA-Led" Worker Screening.

The Aviation and Transportation Security Act, 49 U.S.C. § 44901(a) ("ATSA"), requires TSA to "provide for the screening of all passengers and property." TSA argues that its statutory screening responsibilities extend no further than passengers and passengers' property. Opp. 12-13. But the text of ATSA does not limit the term "property" to "passengers' property," presumably because, as TSA previously argued to this Court, an aviation worker could simply "provide[] the passenger with a prohibited item once he enters the sterile area." Brief of Petitioners City of Billings *et al.* ("Opening Brief"), Addendum at 14 (TSA Brief in *Bonacci v. TSA*, 909 F.3d 1155 (D.C. Cir. 2018)).

To address the vulnerability created by aviation workers, TSA promulgated screening regulations immediately after 9/11 applying to "<u>individuals</u>," not just passengers, "entering a sterile area where screening is conducted by TSA." 67 Fed. Reg. 8340, 8344 (Feb. 22, 2002) (emphasis added); *see* 49 CFR 1540.5 (providing that access to sterile area "generally is controlled by TSA . . . through the screening of <u>persons</u> and property") (emphasis added). And TSA itself has

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

3

argued that limiting TSA's screening responsibilities to passengers "is completely at odds with [ATSA's] overriding purpose of safeguarding passengers from harm." Opening Brief, Addendum at 65 (TSA Brief in *Southwest Airlines Co. v. TSA*, 554 F.3d 1065 (D.C. Cir. 2009)). TSA fails to explain how the interpretation of ATSA offered in its Opposition can be squared with its previous statement regarding ATSA's "overriding purpose."

But even if TSA's current interpretation of ATSA were plausible (and it is not), TSA cannot avoid the inconsistencies between the National Amendment and subsequent legislation. The FAA Extension, Safety & Security Act of 2016, Pub. L. No. 114-190, (Tit. III, subtitle D, § 3407(b)) ("2016 Security Act"), provides that TSA "shall expand the use of transportation security officers and inspectors . . . to conduct physical inspections of airport workers." Opp. 14-15. Instead of addressing that mandate, TSA submits that "there were no additional funds appropriated to TSA to fund this requirement." Declaration of Michael Turner ("Turner Decl.")[1] at ¶ 11; Opp. 17 (TSA could not expand worker screening efforts given "TSA's finite staffing resources."). Rather than reallocating its

---

[1] The Airport Petitioners have contemporaneously filed a Motion to Strike Declaration of Michael Turner because it largely contains material inappropriate for an affidavit.

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

resources to meet the Congressional requirement, TSA placed the financial, logistical and liability burdens of worker screening on airports (which, incidentally, also have their own "finite staffing resources.").

Two years later, the 2018 TSA Modernization Act, Pub. L. No. 115-254, Titl. I, § 1934, 132 Stat. 3186, 3573 (2018), required that "[c]onsistent" with the 2016 Security Act, TSA "shall ensure that TSA-led, random employee physical inspection efforts of aviation workers are targeted, strategic, and focused on providing the greatest level of security effectiveness." (Emphasis added). Again, TSA complains that "there were no additional funds appropriated to TSA to comply with the statute." Turner Decl. at ¶ 13.

Astonishingly, TSA argues that Congressional failures to fund the mandates in either the 2016 Security Act or the 2018 TSA Modernization Act "signal[ ] Congress's expectation that aviation worker screening is a shared responsibility between TSA and airport operators." Turner Decl. ¶¶ 11, 13. Even if the National Amendment created a "shared responsibility" (it does not come close), this Court should "assume that Congress will not implicitly attempt to impose massive financial obligations on … [s]tates" by insufficiently funding a federal program. *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 16 (1981).

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

**B.    TSA Failed to Evaluate Whether Insider Risk Concerns are Addressed by the National Amendment.**

The Airport Petitioners support the development of measures to mitigate insider risk, including the inspection of aviation workers.  But despite repeated Congressional direction regarding TSA's role, and apparently because of TSA's own budget issues, TSA has responded to the risk by shifting responsibility for worker screening onto airports.  The administrative record lacks any consideration of an obvious alternative: reallocating TSA resources to perform the task.  TSA does not know if that alternative is feasible because TSA never considered it. Where "the record lacks a reasonable justification for the [agency decision] and any comparative analysis whatsoever, [an agency's] explanation is arbitrary and capricious." *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1285 (D.C. Cir. 2019).

**C.    TSA Failed to Evaluate the Liability Risks Imposed by the National Amendment.**

The administrative record shows that TSA failed to take adequate account of the airport industry's liability concerns.  *See e.g.*, App. 640, 734.  Now that the Airport Petitioners have raised TSA's refusal to address this issue in their Petitions for Reconsideration and in this Court, *e.g.*, App. 758-59; Opening Brief at 42, TSA has come up with a purported "cure-all": the SAFETY Act.  6 U.S.C. § 442(a)(1).

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

Opp. 19. That statute provides liability protection for the "Seller [of] Qualified Anti-Terrorism Technology to any customer(s)" where the Seller obtains "Designation or Certification" under the Act. 6 C.F.R. 25.2. Among the criteria for "designation" is whether there is a likelihood that the technology will not be deployed unless SAFETY Act protections are provided. 6 U.S.C. § 441(b).

Any SAFETY Act coverage granted to an airport for its worker screening procedures would undoubtedly be challenged by victims of a terror attack on grounds that the airport is not a "seller" of qualified security technology to a "customer," and that, in any case, "technology" which is required by the National Amendment does not need the incentive of SAFETY Act protection for its deployment. Beyond that, DHS guidance, https://www.SafetyAct.gov/lit/faqs, provides that the "user" of qualified security technology "remains responsible for claims that allege negligence by the User." Such negligence claims would no doubt be included in any lawsuit stemming from an alleged breach of a worker screening portal.

Finally, TSA's Opposition ignores the reality that no airport could purchase insurance coverage with limits sufficient to cover the billions of dollars of damages potentially at stake in the event of a terror attack.

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

**D.     The National Amendment Requires Airports to Enforce a Federal Regulatory Scheme in Violation of the Tenth Amendment.**

Contrary to TSA's arguments, Opp. 20, the National Amendment does in fact "require petitioners to . . . enforce a regulatory scheme," *i.e.*, worker screening, to control aviation workers' access to the sterile areas of an airport. In *Printz v. United States*, 521 U.S. 898 (1997), the leading case on the issue (which TSA ignores), the Supreme Court decided that requiring local law enforcement to perform background checks on handgun purchasers impermissibly required local officials to enforce federal gun restriction laws, *id.* at 930, just as the National Amendment impermissibly requires local airports to enforce aviation workers' access to sterile areas controlled by TSA.

TSA also argues that the Tenth Amendment is inapplicable when the federal requirement at issue "applies to both public and private entities." TSA now acknowledges that every airport subject to the National Amendment is a state or local governmental entity, Opp. 22, but it argues that the National Amendment also covers "private aircraft operators and foreign airlines subject to exclusive area agreements." These "exclusive area agreements," in place at a handful of airports, would account for a *de minimis* percentage of the worker screening responsibilities

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

abandoned by TSA, are not even referenced in TSA's cost analyses, and should be irrelevant to the Tenth Amendment analysis.

Lastly, TSA argues that an airport operator which "fail[s] to adequately perform duties under the National Amendment . . . would not be held liable for any failure to act as a governmental entity." Opp. 22. That statement is baseless. Unless state law immunity is available, airports are subject to negligence claims. App. 758-759.

### E. TSA Failed to Comply With the APA's Public Notice and Comment Requirement.

TSA argues that its Airport Security Program ("ASP") regulations, 49 C.F.R. § 1542.105(c), permit the agency to circumvent public notice and comment procedures as long as "safety and the public interest" require it. Opp. 23-24. But even if those regulations contemplated wholesale national amendments to ASPs (they do not), TSA's assertion that "safety and the public interest" require the National Amendment is unsupported. To the contrary, the Airport Petitioners have repeatedly raised concerns that the National Amendment risks degrading security. *See, e.g.,* App. 754-758, 830-831, 1244, 1262.

TSA's effort to distinguish *Electronic Privacy Information Center v. Dep't of Homeland Security*, 653 F.3d 1(D.C. Cir. 2011) ("*EPIC*"), is also unavailing. In

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

*EPIC*, this Court held that TSA's deployment of advanced imaging technology implicated "privacy, safety and efficiency" issues such that it required public notice and comment. *Id* at 5. TSA argues that the National Amendment "has no similar effect on the public at large," Opp. 26, but then simultaneously acknowledges that the issues here implicate "national security" and "public safety." Opp. 33. TSA cannot seriously dispute that airport screeners "perform their screening duties, not only for those boarding airplanes, but also for society generally." *In re September 11 Litigation*, 280 F. Supp. 2d 279, 292-293 (S.D.N.Y. 2003).

### F. The National Amendment Implicates State Constitutional Concerns.

TSA does not contest that state law would govern searches under the National Amendment, or that a warrantless search of personal property in Montana (for example) requires "an objectively reasonable belief" that the property "posed some real threat to safety." Opp. 28, citing *State v. Hamilton*, 314 Mont. 507, 517-518 (2003). TSA's effort to distinguish Montana caselaw fails to explain how an aviation worker carrying a closed purse, backpack or briefcase could, without more, meet that standard. TSA's rejection of state constitutional concerns forces airports, under threat of enforcement action by TSA, to risk liability for violations

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

of state law.

## III.    The Airport Petitioners Face the Prospect of Irreparable Harm.

TSA argues that many airports have hired or have begun to hire employees to conduct worker screening.  Opp. 30-31.  That is not surprising.  Absent a stay, airports risk enforcement by TSA, including steep financial penalties, if they are not in compliance by September 25, 2024.  Other airports, including Juneau, Asheville, Bismarck and Colorado Springs, have begun working on plans to comply, Turner Decl. ¶ 37, but have held off hiring employees or signing contracts with private security contractors depending on the results of this motion.

TSA complains that Airport Petitioners "do not specify the particular cost they expect to incur" in implementing the National Amendment.  Opp. 30-31.  But TSA itself estimates a first-year cost to the industry as high as $62 million, including "screener costs" between $30 and $40 million.  App. 659, 723.  TSA does not address the additional unrecoverable cost if this Court ultimately rules in Petitioners' favor, and Petitioners then lay-off the employees they have hired or terminate contracts.

TSA's Opposition also reverses course on TSA's involvement in worker screening.  From proclaiming that "TSA will not provide training, nor will it

SUBJECT TO PROTECTIVE ORDER IN
City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

prescribe how a search must be accomplished," s*ee* App. 741, TSA now claims that "the agency will work with individual airports to devise compliance plans," Opp. 31, and that "airport operators may coordinate with the TSA Federal Security Director . . . to reach creative solutions for compliance." Turner Decl. ¶ 33. TSA's newfound willingness to "collaborate" with airports is belied by the administrative record, which reflects that TSA has no intention of doing so, and that it only plans to spend a grand total of $300,000, over five years, for "oversight." App. 659, 723.

## IV. The Balance of the Equities and the Public Interest Weigh In Favor of a Stay.

The Airport Petitioners agree that there is enormous public interest in addressing insider risk. But TSA has never explained how abdicating its responsibility for worker screening protects that interest. As ACI-NA, the entity representing all the airports in the country subject to the National Amendment, put it: TSA "is best positioned to provide for the screening of airport workers." App. 1244. It has the experience "to assess, hire and train screeners," *id.*, to take advantage of the latest threat intelligence, *id.*, and to adjust screening training and procedures as required. *Id.*

SUBJECT TO PROTECTIVE ORDER IN
City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

**V.    TSA's Delay in Promulgating the National Amendment Reflects Its Lack of Urgency.**

TSA complains that the Airport Petitioners' delay in bringing this motion counsels against a stay.  Opp. 33.  To be fair, the Airport Petitioners did not have access to the administrative record until January 16, 2024, and moved as quickly as possible to analyze that record, file its brief on the merits, and then file this motion.  Concurrently with court-supervised mediation, the Airport Petitioners made repeated requests to TSA to stay the implementation date, and then on March 19, 2024 filed a formal request with TSA, before involving the Court.

The only material delay was on TSA's part.  TSA proposed the National Amendment on October 6, 2020.  App. 102.  TSA then took more than 2 ½ years to issue the National Amendment in final form.  App. 664.  Given that timeframe, this Court should be skeptical of TSA's claim that providing the nation's airports an extension of the compliance date until 120 days after this Court rules on the merits will substantially impair aviation security and the public interest.

<u>CONCLUSION</u>

This Court should grant the Airport Petitioners' motion for a stay.

SUBJECT TO PROTECTIVE ORDER IN
City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

The City of Billings *et al.*,

By their attorneys,

/s/ *Melissa C. Allison*
Melissa C. Allison
   mallison@andersonkreiger.com
David S. Mackey
   dmackey@andersonkreiger.com
Carlos R. Rosende
   crosende@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
T: 617.594.5940

April 29, 2024

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
**WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.**

**CERTIFICATE OF COMPLIANCE**

1.      This reply complies with the type-volume requirements of Federal Rules of Appellate Procedure 27(d)(2)(A) and Circuit Rule 27(a)(2) because the motion contains 2,588 words, as determined by the word-count function of Microsoft Word 365; and

2.      This reply complies with the typeface requirements of the Federal Rules of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

Dated:  April 29, 2024                              /s/   *David S. Mackey*
                                                            David S. Mackey

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

## CERTIFICATE OF SERVICE

I hereby certify on April 29, 2024, I caused a true and correct copy of this reply to be served on Respondents by electronic mail.

/s/  *David S. Mackey*

David S. Mackey

April 29, 2024

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.