**ORAL ARGUMENT NOT YET SCHEDULED**

No. 23-1290

Consolidated with No. 23-1328

---

# UNITED STATES COURT OF APPEALS

# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

CITY OF BILLINGS, CITY OF BISMARCK, CITY OF COLORADO SPRINGS, DANE COUNTY, FLATHEAD MUNICIPAL AIRPORT AUTHORITY, GREATER ASHEVILLE REGIONAL AIRPORT AUTHORITY, CITY AND BOROUGH OF JUNEAU, MASSACHUSETTS PORT AUTHORITY, METROPOLITAN AIRPORTS COMMISSION, MILWAUKEE COUNTY, OKLAHOMA CITY AIRPORT TRUST, CITY OF PHILADELPHIA, RALEIGH DURHAM AIRPORT AUTHORITY, CITY OF SAN JOSE, SPOKANE AIRPORT BOARD, and AIRPORTS COUNCIL INTERNATIONAL – NORTH AMERICA

*Petitioners,*

v.

TRANSPORTATION SECURITY ADMINISTRATION AND DAVID P. PEKOSKE, ADMINISTRATOR,

*Respondents.*

---

ON PETITION FOR REVIEW OF A DECISION
OF THE TRANSPORTATION SECURITY ADMINISTRATION

---

## REPLY BRIEF OF PETITIONERS CITY OF BILLINGS ET AL.

Melissa C. Allison
David S. Mackey
Carlos R. Rosende
Anderson & Kreiger LLP
50 Milk Street, 21st Floor
Boston, MA 02109
mallison@andersonkreiger.com
dmackey@andersonkreiger.com
crosende@andersonkreiger.com
T: 617.594.5940
*Counsel for Petitioners*

May 21, 2024

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**

WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

ARGUMENT ....................................................................................................3

I.   TSA Has No Statutory Authority to Abdicate Its Aviation Worker Screening
     Responsibilities.............................................................................................3

     A.   The National Amendment is Inconsistent with ATSA, TSA's Regulations,
          and Subsequent Congressional Action Mandating Enhanced, "TSA-Led"
          Aviation Worker Screening........................................................................3

     B.   TSA's Broad Authority to Regulate Aviation Security Does Not Override
          its Statutory Obligation to Carry Out Aviation Worker Screening.............7

     C.   TSA Regulations and Security Directives Do Not Require Airport
          Operators to Carry Out the Screening Requirements of the National
          Amendment. ...............................................................................................9

II.  TSA's Abdication of its Aviation Worker Screening Responsibilities is
     Arbitrary and Capricious. ..................................................................................12

     A.   TSA Failed to Evaluate Whether Insider Risk Concerns are Addressed by
          the National Amendment..........................................................................12

     B.   TSA Failed to Adequately Consider the Costs Imposed on Airports.......15

     C.   TSA Failed to Evaluate the Liability Risks Imposed by the National
          Amendment. .............................................................................................16

III. The National Amendment Violates the Tenth Amendment. ..............................19

IV.  TSA Failed to Comply with the APA's Public Notice and Comment
     Requirement.........................................................................................................24

V.   The National Amendment Violates the Right to Privacy Guaranteed by the
     Montana Constitution. .........................................................................................27

VI.  Petitioner Airports Council International-North America Has Standing to
     Challenge the National Amendment in the Administrative Process and in this
     Court. ..................................................................................................................28

CONCLUSION ........................................................................................................30

SUBJECT TO PROTECTIVE ORDER IN
City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR
PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW",
AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR
OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT
AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

# TABLE OF AUTHORITIES

## Cases

*Air Transport Ass'n. of America, Inc. v. U.S.D.A.*,
 37 F.4th 667 (D.C. Cir. 2022) .................................................................8

*Amerijet Int'l, Inc. v. Pistole*,
 753 F.3d 1343 (D.C. Cir. 2014) ............................................................13

*Ass'n. of Private Sector Colleges and Universities v. Duncan*,
 681 F.3d 427 (D.C. Cir. 2012) ..............................................................17

*Atlantic City Elec. Co. v. FERC*,
 295 F.3d 1 (D.C. Cir. 2002) ....................................................................6

*Bonacci v. TSA*,
 909 F.3d 1155 (D.C. Cir. 2018) ..............................................................3

*Chandler v. Miller*,
 520 U.S. 305 (1997) ..............................................................................27

*City of Brookings Mun. Tel. Co. v. FCC*,
 822 F.2d 1153 (D.C. Cir. 1987) ....................................................... 14, 15

*City of Houston v. Ayala*,
 628 S.W.3d 615 (Tex. Ct. App. 2021) ...................................................22

*Deak-Perrera Hawaii, Inc. v. Dep't of Transp. Hawaii*,
 553 F. Supp. 976 (D. Hawaii 1983) .......................................................23

*E.W. Wiggins Airways, Inc. v. Massachusetts Port Auth.*,
 362 F.2d 52 (1st Cir. 1966) ...................................................................23

*Electronic Privacy Information Center v. United States Dep't of Homeland Sec.*,
 653 F.3d 1 (D.C. Cir. 2011) ............................................................ 24, 25, 27

*F.E.C. v. Democratic Senatorial Campaign Committee*,
 454 U.S. 27 (1981) ..................................................................................6

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

*Haaland v. Brackeen*,
   599 U.S. 255 (2023)...............................................................................23

*Hikvision USA, Inc. v. F.C.C.*,
   97 F.4th 938 (D.C. Cir. 2024) ..............................................................6

*Hispanic Affairs Project v. Acosta*,
   901 F.3d 378 (D.C. Cir. 2018) .............................................................11

*Humane Society of United States v. Zinke*,
   865 F.3d 585 (D.C. Cir. 2017) .............................................................15

*Hutchins v. District of Columbia*,
   188 F.3d 531 (D.C. Cir. 1999) (en banc) ............................................29

*Illinois Com. Comm'n v. I.C.C.*,
   749 F.2d 875 (D.C. Cir. 1984) ...............................................................6

*In re: September 11 Litigation*,
   280 F.Supp. 2d 279 (S.D.N.Y. 2003) ...................................... 18, 22, 26

*Kentucky Mun. Energy Agency v. FERC*,
   45 F.4th 162 (D.C. Cir. 2022) ..............................................................16

*Kisor v. Wilkie*,
   588 U.S. 558 (2019)........................................................................11, 24

*Mack Trucks, Inc. v. EPA*,
   682 F.3d 87 (D.C. Cir. 2012) ...............................................................25

*McKelvey v. State*,
   474 P.3d 16 (Alaska 2020)...................................................................28

*Metlife, Inc. v. Fin. Stability Oversight Council*,
   177 F.Supp.3d 219 (D.D.C. 2016) .......................................................16

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
   584 U.S. 453 (2018).............................................................................20

**SUBJECT TO PROTECTIVE ORDER IN**
City of Billings v. TSA, **Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

*National Labor Relations Board v. NP Palace LLC*,
1 F.4th 12 (D.C. Cir. 2021) ....................................................................29

*National Shooting Sports Foundation, Inc. v. Jones*,
716 F.3d 200 (D.C. Cir. 2013) ...................................................... 13, 15

*Nebraska v. EPA*,
331 F.3d 995 (D.C. Cir. 2003) ...........................................................21

*Nichols v. Bd. of Trs. of Asbestos Workers Local 24 Pension*,
835 F.2d 881 (D.C. Cir. 1987) ...........................................................29

*Office of Communication of United Church of Christ v. FCC*,
707 F.2d 1413 (D.C. Cir. 1983) .........................................................16

*Orengo Caraballo v. Reich*,
11 F.3d 186 (D.C. Cir. 1993)...............................................................24

*Pennhurst State Sch. and Hosp. v. Halderman*,
451 U.S. 1 (1981)..................................................................................7

*People v. McKnight*,
446 P.3d 397 (Colo. 2019) .................................................................28

*Potomac Aviation, LLC v. Port Auth. of New York and New Jersey*,
413 N.J. Super. 212 (App. Div. 2010)................................................22

*Printz v. United States*,
521 U.S. 898 (1997)........................................................ 19, 20, 21, 22

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
566 U.S. 639 (2012)..............................................................................8

*Reno v. Condon*,
582 U.S. 141 (2000)............................................................................21

*Screaming Eagle Air, Ltd. v. Airport Comm'n of Forsyth County*,
97 N.C. App. 30 (N.C. Ct. App. 1990) ..............................................22

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

*SecurityPoint Holdings, Inc. v. TSA*,
769 F.3d 1184 (D.C. Cir. 2014)................................................................17

*South Carolina v. Baker*,
485 U.S. 505 (1988).................................................................................21

*Southwest Airlines Co. v. TSA*,
554 F.3d 1065 (D.C. Cir. 2009) .................................................................4

*State of N.J., Dept. of Environmental Protection v. EPA*,
626 F.2d 1038 (D.C. Cir. 1980) ...............................................................25

*State v. Goetz*,
345 Mont. 421 (2008) ..............................................................................27

*State v. Hamilton*,
314 Mont. 507 (2003) ..............................................................................27

*Summers v. Earth Island Institute*,
555 U.S. 488 (2009).................................................................................29

*United States v. Chase*,
135 U.S. 255 (1890)...................................................................................8

*United Steel v. Mine Safety & Health Admin.*,
925 F.3d 1279 (D.C. Cir. 2019) ..................................... 13, 14, 15, 26

*Washburn v. Lawrence County Bd. of Commissioners*,
720 F.3d 347 (6th Cir. 2013)....................................................................22

*York v. Wahkiakum School District No. 200*,
178 P.3d 995 (Wash. 2008) .....................................................................28

**Statutes**

49 U.S.C. § 114 ..........................................................................................7

49 U.S.C. § 44901 ......................................................................................3

49 U.S.C. § 44903 ...................................................................................7, 8

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR
PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW",
AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR
OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT
AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

5 U.S.C. § 551 ...........................................................................................24

6 U.S.C. § 441 ...........................................................................................17

Consolidated Appropriations Act, 2021, Pub. L. No. 116-260 § 219, 134 Stat. 1182 (2020) ...........................................................................................16

FAA Extension, Safety & Security Act of 2016, Pub. L. No. 114-190, § 3407 ....5, 8

TSA Modernization Act, Pub. L. No. 115-254, Tit. I, § 1934, 132 Stat. 3186 (2018) ...........................................................................................5, 8

**Regulations**

49 C.F.R. § 1540.107 .................................................................................4, 10

49 C.F.R. § 1540.5 ....................................................................................4, 10

49 C.F.R. § 1542.101 .................................................................................9

49 C.F.R. § 1542.103 .................................................................................10

49 C.F.R. § 1542.105 .................................................................................24

49 C.F.R. § 1542.201 .................................................................................9

49 C.F.R. § 1542.203 .................................................................................9

49 C.F.R. § 1544.101 .................................................................................10

49 C.F.R. § 1544.103 .................................................................................10

49 C.F.R. § 1544.401-411 .........................................................................10

6 C.F.R. § 25.2 ..........................................................................................17

67 Fed. Reg. 8340 (Feb. 22, 2002) ...........................................................4

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

## INTRODUCTION

In response to the Airport Petitioners' challenge, TSA argues that the National Amendment is lawful because it implements a "shared responsibility" between TSA and airports for aviation worker screening. *See, e.g.*, Brief of Respondents ("TSA Br.") 21, 28. But that argument is belied by the administrative record, which unequivocally states that the National Amendment places "the responsibility to screen aviation works [sic] at airports on the airport operator." Joint Appendix ("App.") 592. As TSA explained, "the airport is responsible for implementing and conducting screening." App. 734. "TSA will not provide training, nor will it prescribe how a search must be accomplished…The methods and training requirements must be developed and implemented by the airport." App. 741. And by TSA's own calculation, the airport industry will incur massive screening costs of $302 million in the first five years. App. 723. Over that same period, TSA will spend only $300,000 (less than 0.1% of the cost of worker screening) for "oversight and support." *Id.*

TSA is not sharing responsibility with airports under the National Amendment, but is shifting the responsibility for aviation worker screening

SUBJECT TO PROTECTIVE ORDER IN
City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.
1

entirely to airport operators.  TSA has no statutory authority to abdicate this Congressionally-mandated screening obligation.

But even if TSA had the statutory authority to walk away from aviation worker screening, the agency's action is arbitrary and capricious because TSA failed to give any genuine consideration to whether the National Amendment will address its stated insider threat concern; failed to undertake any cost-benefit analysis; and failed to consider a variety of other concerns raised by Airport Petitioners, including the massive potential liability that airports will be forced to shoulder.  TSA also fails even to mention, much less meaningfully address, the leading Supreme Court case directly supporting the Airport Petitioners' Tenth Amendment argument, and attempts to circumvent the APA's public notice and comment requirements notwithstanding the National Amendment's national scope and public importance.  Finally, TSA effectively ignores the Airport Petitioners' state constitutional concerns, forcing certain airport operators to violate state law in order to carry out an obligation that belongs with TSA.  For all of these reasons, the Court should vacate the National Amendment.

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR
PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW",
AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR
OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT
AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.
2

## ARGUMENT

**I. TSA Has No Statutory Authority to Abdicate Its Aviation Worker Screening Responsibilities.**

**A. The National Amendment is Inconsistent with ATSA, TSA's Regulations, and Subsequent Congressional Action Mandating Enhanced, "TSA-Led" Aviation Worker Screening.**

The Aviation and Transportation Security Act, 49 U.S.C. § 44901(a) ("ATSA"), requires TSA to "provide for the screening of all passengers and property." TSA suggests that the "express terms" of ATSA extend no further than passengers and passengers' property. TSA Br. 43. But the text does not limit the term "property" to "passengers' property," presumably because, as TSA previously argued to this Court, an aviation worker could simply "provide[] the passenger with a prohibited item once he enters the sterile area." Brief of Petitioners City of Billings *et al.* ("Opening Brief"), Addendum at 14 (TSA Brief in *Bonacci v. TSA*, 909 F.3d 1155 (D.C. Cir. 2018)).[1]

---

[1] TSA notes that in *Bonacci* this Court found that statutory provisions other than ATSA authorized screening of non-passengers (there, flight crewmembers) entering the sterile area. TSA Br. 43-44. But TSA argued, and the Court did not disagree, that ATSA gives TSA authority to screen all individuals entering the sterile area, including aviation workers. Addendum at 14; *Bonacci*, 909 F.3d at 1161.

SUBJECT TO PROTECTIVE ORDER IN
City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR
PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW",
AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR
OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT
AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

To address the vulnerability created by aviation workers, TSA promulgated screening regulations immediately after 9/11 applying to "<u>individuals</u>," not just passengers, "entering a sterile area where screening is conducted by TSA." 67 Fed. Reg. 8340, 8344 (Feb. 22, 2002) (emphasis added); 49 C.F.R. § 1540.107(a) ("[n]o individual may enter a sterile area or board an aircraft without submitting to the screening and inspection of his or her person and accessible property"); *see* 49 C.F.R. § 1540.5 (providing that access to sterile area "generally is controlled by TSA . . . through the screening of <u>persons</u> and property") (emphasis added).[2] And TSA itself has argued that limiting TSA's screening responsibilities to passengers "is completely at odds with [ATSA's] overriding purpose of safeguarding passengers from harm." Opening Brief, Addendum at 65 (TSA Brief in *Southwest Airlines Co. v. TSA*, 554 F.3d 1065 (D.C. Cir. 2009)). TSA fails to explain how the interpretation of ATSA it offers in this case can be squared with its previous statement regarding ATSA's "overriding purpose."

---

[2] TSA notes that other security-restricted areas on an airport are not defined by TSA screening checkpoints, TSA Br. 44 n. 5, but that misses the point. Airport Petitioners call out this regulation to demonstrate that TSA itself construes its screening obligations to extend to non-passengers.

**SUBJECT TO PROTECTIVE ORDER IN**
<u>City of Billings v. TSA</u>, **Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

But even if TSA's current interpretation of ATSA were plausible (and it is not), TSA cannot avoid the inconsistencies between the National Amendment and legislation enacted subsequent to ATSA. The FAA Extension, Safety, and Security Act of 2016, Pub. L. No. 114-190, (Tit. III, subtitle D, § 3407(b)) ("2016 Security Act"), provides that TSA "shall <u>expand the use of transportation security officers and inspectors</u> . . . to conduct . . . physical inspections of airport workers." (Emphasis added). Two years later, the 2018 TSA Modernization Act, Pub. L. No. 115-254, Tit. I, § 1934, 132 Stat. 3186, 3573 (2018), required that "[c]onsistent" with the 2016 Security Act, TSA "shall ensure that <u>TSA-led</u>, random employee physical inspection efforts of aviation workers are targeted, strategic, and focused on providing the greatest level of security effectiveness." (Emphasis added).

TSA responds that the 2016 and 2018 Acts contemplated that airport operators would play some role in aviation worker screening because those statutes directed TSA to identify "best practices" for "additional access control and airport worker security;" to conduct reviews of airports that have "implemented additional airport worker screening or security screening;" and to study "shared cost and feasibility to airports, airlines and the TSA" of implementing enhanced screening; TSA Br. 5-7, 46-48. But TSA ignores that those statutes mandated that TSA

**SUBJECT TO PROTECTIVE ORDER IN**
<u>City of Billings v. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.
5

"expand the use of transportation security officers and inspectors" to conduct aviation worker screening and enhance "TSA-led" inspection efforts. TSA's decision to shift the entire responsibility for aviation worker screening to airport operators is directly contrary to those Congressional mandates.

Even if TSA's interpretation of the 2016 and 2018 Acts were correct, the National Amendment does not come close to creating a "shared" responsibility for aviation worker screening. "In the absence of statutory authorization for its act, an agency's action is plainly contrary to law and cannot stand." *Hikvision USA, Inc. v. F.C.C.,* 97 F.4th 938, 944 (D.C. Cir. 2024) (citing *Atlantic City Elec. Co. v. FERC*, 295 F.3d 1, 8 (D.C. Cir. 2002) (cleaned up)); *see also Illinois Com. Comm'n v. I.C.C.*, 749 F.2d 875, 880 (D.C. Cir. 1984) ("agency constructions that are inconsistent with the statutory mandate or that frustrate the policy that Congress sought to implement must be overturned as unreasonable") (quoting *F.E.C. v. Democratic Senatorial Campaign Committee*, 454 U.S. 27, 32 (1981) (internal quotation marks omitted)).[3]

_____

[3] TSA also argues that Congressional failures to fund the mandates in either the 2016 Security Act or the 2018 TSA Modernization Act suggest that airports are meant to share the burden of aviation worker screening. TSA Br. 23-24. The National Amendment hardly creates a "shared responsibility," and in any case this Court should "assume that Congress will not implicitly attempt to impose massive

SUBJECT TO PROTECTIVE ORDER IN
City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

6

B. **TSA's Broad Authority to Regulate Aviation Security Does Not Override its Statutory Obligation to Carry Out Aviation Worker Screening**

Despite the repeated Congressional directives to TSA to carry out aviation worker screening, TSA argues that shifting screening responsibilities to airport operators is within TSA's "broad authority to regulate civil aviation security." TSA Br. 39-40. TSA relies on a host of provisions regarding its general authority over civil aviation security. *See* TSA Br. 2-4, 40, citing 49 U.S.C. § 114(f)(11) (authority to "oversee" and "ensure the adequacy of" security measures); *id.* § 44903(b) (authority to "prescribe regulations to protect passengers and property on an aircraft"); *id.* § 44903(h)(4)(A) (authority to "require screening or inspection of all individuals, goods, property, vehicles, and other equipment before entry into a secured area of an airport" in a manner "that will assure at least the same level of protection as will result from screening of passengers and their baggage.").

The statutes on which TSA relies notably do *not* specify that airport operators must carry out aviation worker screening. By contrast, the 2016 Security Act and the 2018 TSA Modernization Act *do* specify that TSA must carry out

---

financial obligations on … [s]tates" by insufficiently funding a federal program. *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 16 (1981).

**SUBJECT TO PROTECTIVE ORDER IN**
City of Billings v. TSA**, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

aviation worker screening. Pub. L. No. 114-190, § 3407(a)(3); Pub. L. No. 115-254, tit. I, § 1934. Long before 2016, TSA took the position that ATSA's reference to screening "passengers and property" must be read to include screening of non-passengers by TSA. *See* Opening Brief, Addendum at 65. The statutory requirement that TSA assure that "all individuals, goods [and] property" undergo the same level of screening as passengers" similarly suggests that TSA must carry out that screening. 49 U.S.C. § 44903(h)(4)(A).

TSA cannot invoke its general statutory authority over aviation security to avoid a specific statutory directive that *TSA itself* carry out aviation worker screening. *See Air Transport Ass'n. of America, Inc. v. U.S.D.A.*, 37 F.4th 667, 673 (D.C. Cir. 2022) ("General language of a statutory provision, although broad enough to include it, will not be held to apply to a matter specifically dealt with in another part of the same enactment") (quoting *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012)); *United States v. Chase*, 135 U.S. 255, 260 (1890) ("where there is … a particular enactment, and also a general one, which, in its most comprehensive sense, would include what is embraced in the former … the general enactment must be taken to affect only such cases within its general language as are not within the provisions of the particular enactment")

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

8

SENSITIVE SECURITY INFORMATION / UNDER SEAL

(citation omitted).  TSA must comply with the specific Congressional mandates in

ATSA and the 2016 and 2018 Acts, which do not allow TSA to walk away from

aviation worker screening and shift the responsibility to airports.

**C.    TSA Regulations and Security Directives Do Not Require Airport Operators to Carry Out the Screening Requirements of the National Amendment.**

TSA suggests that longstanding regulations promulgated by FAA pre-9/11,

which have been administered by TSA since its creation, as well as Security

Directives TSA has issued since 2006, require airports to carry out aviation worker

screening.  TSA Br. 7-11, 40-42.  Not so.

TSA's regulations in fact demonstrate a sharp division between TSA's

responsibilities (which include screening of individuals and property) and airport

operators' responsibilities (which do not).  While TSA argues that airports are

responsible for implementing security programs that "guard[] against the

introduction of unauthorized weapons and explosives and prevent[] and detect[]

unauthorized entry into an airport's security-restricted areas," *see* TSA Br. 41

(citing 49 C.F.R. §§ 1542.101(a)(1), 1542.201 (b), 1542.203 (b)), TSA disregards

the regulations that address how that responsibility is carried out.

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.
9

The required content of an Airport Security Program ("ASP") is described in 49 C.F.R. § 1542.103. An airport operator's responsibilities include designating various secured areas of the airport, conducting criminal history checks and security badging, providing training to persons who enter secure or sterile areas, ensuring the qualifications and training of local law enforcement personnel, maintaining certain records, and finally, creating "procedures and a description of facilities and equipment <u>used to support TSA inspection of individuals and property,</u> and aircraft operator or foreign air carrier screening functions of parts 1544 and 1546 of this chapter." 49 C.F.R. § 1542.103(a)(14) (emphasis added). TSA's regulations include no requirement that airport operators carry out screening of individuals or property, nor do they include any standards for such screening.

By contrast, TSA's regulations expressly provide that all individuals entering a sterile area are subject to screening by TSA. *See* 49 C.F.R. § 1540.107(a); 49 C.F.R. § 1540.5. The regulations also include extensive requirements applicable to aircraft operators who wish to carry out their own screening of individuals, rather than using TSA checkpoints. *See* 49 C.F.R. §§ 1544.101, 1544.103(c) (governing the screening of individuals and property and the use of metal detection, x-rays and explosive detection systems); *id.* at § 1544.401-411 (qualification and training

**SUBJECT TO PROTECTIVE ORDER IN**
<u>City of Billings v. TSA</u>, Nos. 23-1290, 1328 (D.C. Cir.)
~~WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.~~

10

requirements for screening personnel).  Where such screening requirements are

notably absent for airport operators, this Court should not defer to TSA's effort to

read such requirements into generic regulations about keeping weapons and

unauthorized persons out of secure areas.  *See, e.g., Kisor v. Wilkie*, 588 U.S. 558,

574-75 (2019) ("[A] court should not afford *Auer* deference unless the regulation is

genuinely ambiguous"); *Hispanic Affairs Project v. Acosta*, 901 F.3d 378, 387

(D.C. Cir. 2018) (where an agency's interpretation "would contravene the plain

text of its own regulations," the court must reject it).

Finally, the TSA Security Directives issued since 2006, *see* App. 1-23, 34-

47, 54-67, 71-84, 88-101, 125-38, 496-506, do not alter the division of

responsibilities set forth in the regulations – nor could they, without an amendment

to the regulations.  Those Security Directives require airport operators to verify

that aviation workers are badged to enter a secured area and are not openly

carrying prohibited items.  *See, e.g.,* App. 498-99.  Nothing in the Security

Directives requires the physical screening of persons and property that is required

under the National Amendment.[4]

---

[4] TSA describes at length its own efforts to enhance aviation worker screening in
response to the 2015 Aviation Security Advisory Committee report, including
proposing voluntary measures to airport operators through Information Circulars,

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR
PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW",
AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR
OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT
AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

11

II.     **TSA's Abdication of its Aviation Worker Screening Responsibilities is Arbitrary and Capricious.**

A.     **TSA Failed to Evaluate Whether Insider Risk Concerns are Addressed by the National Amendment.**

The Airport Petitioners support the development of outcome-focused measures to mitigate insider risk.  However, despite repeated Congressional direction in the 2016 Security Act and the 2018 TSA Modernization Act that TSA lead this effort, and apparently because of TSA's own budget issues, *see, e.g.,* App. 733, TSA Br. 51, TSA has responded to the insider threat risk by shifting responsibility for aviation worker screening onto airports.  App. 507, 734, 741.  TSA persists in describing the National Amendment as a "collaborative effort" to "supplement" or "build on" TSA's worker screening procedures, *see, e.g.*, TSA Br. 49, 51, 52, but that is not what the National Amendment does.  The administrative record could not be clearer that airport operators bear the responsibility for aviation worker screening.  *See, e.g.*, App. 734, 741.  The Court should disregard TSA's

---

before issuing the mandatory National Amendment.  TSA Br. 13-16.  The fact that some airports might have assisted with aviation worker screening voluntarily under the processes and supervision of TSA is irrelevant to whether TSA has the statutory and regulatory authority to shift all of the responsibility and costs of aviation worker screening to airports.  It does not.

**SUBJECT TO PROTECTIVE ORDER IN**
City of Billings v. TSA, **Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.
12

pretense that the National Amendment creates a "shared responsibility" between TSA and airport operators.

Although TSA has repeatedly made conclusory statements that the National Amendment is "necessary," *see, e.g.,* App. 513, TSA Br. 49, the agency never once evaluated whether placing responsibility for aviation worker screening on airports would provide any benefit to aviation security. Indeed, the administrative record contains no justification for the allocation of responsibility prescribed by the Amendment. TSA's statements regarding the Amendment's necessity are not "informed judgments," TSA Br. 49-50, but instead are "conclusory statements" that simply "will not do" under arbitrary and capricious review. *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014); *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1285 (D.C. Cir. 2019).

The administrative record shows TSA failed to consider even a single alternative to the National Amendment, let alone the most obvious: keeping responsibility for aviation worker screening with TSA. *See National Shooting Sports Foundation, Inc. v. Jones*, 716 F.3d 200, 215 (D.C. Cir. 2013) (failure to consider "reasonably obvious alternative[s]" renders an agency decision arbitrary and capricious (quoting *City of Brookings Mun. Tel. Co. v. FCC*, 822 F.2d 1153,

SUBJECT TO PROTECTIVE ORDER IN
City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

13

1169 (D.C. Cir. 1987))). TSA's failure to analyze any other potential aviation worker screening arrangement and its failure to provide a justification for allocating responsibility for worker screening to airports renders the Amendment arbitrary and capricious. *See United Steel*, 925 F.3d at 1285 (where the record lacks "any comparative analysis whatsoever" the agency decision is arbitrary and capricious).

TSA also ignored industry concerns about the mandatory use of TSA's Aviation Worker Screening Tool (AWST). App. 752, 999. The AWST's underlying formula is based on inaccurate assumptions regarding, for example, which Secured Area ID Media Holders are permitted to use which access points. *See, e.g.,* App. 999-1001. The resulting AWST-generated screening requirements are in some cases duplicative while ironically permitting a *decrease* in existing worker screenings and demanding an expansion of the airport's screener workforce. *See, e.g.,* App. 1000, 984. TSA never explained the connection between the AWST's formula and the insider threat the AWST was theoretically designed to address, but the AWST's absurd results indicate that there is no rational relationship, rendering its implementation arbitrary and capricious. *See United Steel*, 925 F.3d at 1285 ("[a]n agency must articulate…a rational

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
**WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.**
14

connection between the facts found and the choice made" (internal quotations omitted)). TSA evidently never considered that the AWST's formula would permit or even require airports to reallocate security resources in a manner that could degrade security.[5] *Humane Society of United States v. Zinke*, 865 F.3d 585, 605 (D.C. Cir. 2017) (if an agency decision "failed to consider an important aspect of the problem," it is arbitrary and capricious).

## B. TSA Failed to Adequately Consider the Costs Imposed on Airports.

TSA asserts that because it calculated the costs imposed on airports by the National Amendment – and then declared them warranted – it adequately considered them. TSA Br. 53. But TSA's cost calculations were solely that: a determination of the expense of implementing the Amendment. App. at 656, 675, 720. The record lacks any indication that TSA considered funding arrangements besides imposing the vast majority of the Amendment's costs on airports, rendering its decision to do so arbitrary and capricious. *See United Steel*, 925 F.3d at 1285; *National Shooting Sports Foundation, Inc.*, 716 F.3d at 215.

---

[5] Contrary to TSA's assertion, TSA Br. 57, Petitioner Metropolitan Airports Commission has *not* requested approval for an alternate compliance plan, nor has it submitted any request for alternative measures.

**SUBJECT TO PROTECTIVE ORDER IN**
City of Billings v. TSA**, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

15

Nor did TSA weigh the Amendment's costs against any anticipated benefit to aviation security, ignoring both an important aspect of the problem and Congress's direction to subject screening measures to cost-benefit analysis.  *See* Consolidated Appropriations Act, 2021, Pub. L. No. 116-260 § 219, 134 Stat. 1182, 1458 (2020); *Kentucky Mun. Energy Agency v. FERC*, 45 F.4th 162, 177 (D.C. Cir. 2022) ("agencies cannot disregard important aspects of a problem before them").  While an agency's evaluation of the costs and benefits of a proposed action "epitomize[s] the types of decisions that are most appropriately entrusted to the expertise of an agency," where, as here, an agency ignored important factors and failed to conduct any cost-benefit analysis at all, its decision is arbitrary and capricious.  *Off. of Communication of United Church of Christ v. FCC*, 707 F.2d 1413, 1440-41 (D.C. Cir. 1983); *Metlife, Inc. v. Fin. Stability Oversight Council*, 177 F.Supp.3d 219, 239-42 (D.D.C. 2016) (invalidating a regulation where the agency failed to conduct required cost-benefit analysis and stating "cost-benefit analysis is a central part of the administrative process").

## C. TSA Failed to Evaluate the Liability Risks Imposed by the National Amendment.

TSA failed to consider the Petitioners' concerns that the National Amendment would potentially impose massive liability on airport operators.  *See*

SUBJECT TO PROTECTIVE ORDER IN
City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.
16

*e.g.*, App. 640, 734; *see Ass'n. of Private Sector Colls. and Univs. v. Duncan*, 681 F.3d 427, 441 (D.C. Cir. 2012) ("[a] regulation will be deemed arbitrary and capricious, if the issuing agency failed to address significant comments raised during the rulemaking"); *SecurityPoint Holdings, Inc. v. TSA*, 769 F.3d 1184, 1189 (D.C. Cir. 2014) (where TSA "failed to consider an important aspect of the problem," its decision was arbitrary and capricious) (internal quotations omitted).

Prior to issuing the National Amendment, TSA's responses to the airport industry's liability concerns were dismissive at best. *See, e.g.,* App. 610, 640, 734. Nowhere in the administrative record does TSA suggest that Congress has provided liability protection for airports that engage in aviation worker screening. TSA provided its dubious solution – the SAFETY Act, 6 U.S.C. § 442(a)(1) – only after Petitioners raised the issue in their Petitions for Reconsideration. *E.g.*, App. 758-59, 892-93. However, that statute provides liability protection for the "Seller [of] Qualified Anti-Terrorism Technology to any customer(s)" where the Seller obtains "Designation and/or Certification" under the Act. 6 C.F.R. § 25.2. Among the criteria for "designation" is whether there is a likelihood that the technology will not be deployed unless SAFETY Act protections are provided. 6 U.S.C. § 441(b).

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.
17

Any SAFETY Act coverage granted to an airport for its aviation worker screening procedures would undoubtedly be challenged by victims of a terror attack on grounds that the airport is not a "Seller" of "Qualified Anti-Terrorism Technology" to a "customer," and that, in any case, "Technology" which is a legal requirement under the National Amendment does not need the further incentive of SAFETY Act protection for its deployment.  Beyond that, DHS guidance, https://www.SafetyAct.gov/lit/faqs, provides that the User of Qualified Anti-Terrorism Technology "remains responsible for claims that allege negligence by the User."  In other words, even if the airport could be considered the "User" of "Qualified Anti-Terrorism Technology," plaintiffs would nonetheless argue that airports are not protected from negligence claims, and negligence claims would likely be included in any lawsuit stemming from an alleged breach of a worker screening portal.  *E.g.*, *In re: September 11 Litigation*, 280 F.Supp. 2d 279 (S.D.N.Y. 2003).  And TSA ignores the reality that no airport could purchase insurance coverage with limits sufficient to cover the billions of dollars of damages potentially at stake in the event of a terror attack, and the likelihood that such

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.
18

litigation could bankrupt airports and wreak havoc on the national transportation system.[6]  *See, e.g.,* App. 758-59.

## III.    The National Amendment Violates the Tenth Amendment.

TSA's argument regarding its compliance with the Tenth Amendment and the anti-commandeering doctrine, TSA Br. 59-64, does not even mention the Supreme Court authority relied upon by the Airport Petitioners.  As the Supreme Court held in language squarely applicable here, "the Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program."  *Printz v. United States*, 521 U.S. 898, 935 (1997).  In fact, given TSA's now admitted rationale for the National Amendment, its lack of funding, App. 733; Declaration of Michael Turner, Respondents' Opposition to Petitioners' Motion for Stay Pending Review, Addendum ¶¶ 11, 13, *Printz* is directly applicable.  The Supreme Court recognized

---

[6] TSA's argument, TSA Br. 55, n 6, that the National Amendment allows airports to "develop plans tailored to their particular circumstances" and could potentially allow airports to use TSA checkpoints or existing screening procedures to satisfy the requirements – in the unique circumstances where those options are feasible and TSA allows it – does not resolve any of the Airport Petitioners' concerns about TSA's abdication of its screening responsibilities.

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

19

in *Printz* that if the federal government could require states to implement federal regulatory programs, it could "take credit for 'solving' problems without having to ask [its] constituents to pay for the solutions with higher federal taxes." *Id.* at 930. "[T]he anti-commandeering rule promotes political accountability . . . [and] prevents Congress from shifting the costs of regulation to the states." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 473–474 (2018).

TSA has no answer to *Printz*, so never mentions it. Instead, TSA argues that the National Amendment "does not require petitioners to enforce a regulatory scheme as governmental entities but rather simply regulates them directly in their capacity as airport operators." TSA Br. 60. This argument is contradicted by *Printz*. The background check requirements at issue in *Printz* violated the Tenth Amendment because they did not simply regulate local police chiefs, but instead because they imposed requirements on how police chiefs must regulate their private citizens purchasing handguns. Similarly, the National Amendment imposes requirements on how local governmental entities must regulate aviation workers accessing the sterile and secured areas of airports. The National Amendment does not just regulate states. It "seek[s] to control or influence the manner in which

**SUBJECT TO PROTECTIVE ORDER IN**
City of Billings v. TSA, **Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.
20

states regulate private parties." *South Carolina v. Baker*, 485 U.S. 505, 514 (1988).

All of the cases cited by TSA, TSA Br. 60, are distinguishable on that basis, involving regulation of local governmental entities, not requirements regarding how local governmental entities regulate private citizens. *E.g., Reno v. Condon*, 528 U.S. 141, 150-151 (2000) (federal law prohibiting states from releasing personal information held by state motor vehicle departments); *Baker*, 485 U.S. at 514-515 (federal law prohibiting states from issuing unregistered bonds); *Nebraska v. EPA*, 331 F.3d 995, 999 (D.C. Cir. 2003) (federal regulation setting maximum contaminant levels in public water systems).

TSA also fails to confront another aspect of the Supreme Court decision in *Printz*, that the Tenth Amendment not only prohibits the federal government from imposing the cost of a federal regulatory program on the states, but also prohibits the federal government from shifting liability for that program onto the states. As the Supreme Court noted with respect to the federal statute imposing the burden of background checks for handgun purchasers on local police chiefs, it will be local police chiefs, "not some federal official, who will be blamed for any error." *Printz*, 520 U.S. at 930. The National Amendment's proclamation, that "the

**SUBJECT TO PROTECTIVE ORDER IN**
City of Billings v. TSA, **Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR
PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW",
AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR
OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT
AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.
21

airport is responsible for implementing and conducting screening," App. 734, implicates precisely the liability concerns identified in *Printz*.

TSA argues that "even if a failure to adequately perform duties under the National Amendment could result in liability, an airport operator in that situation would not be held liable for any failure to act as a governmental entity." TSA Br. 64. This argument is patently incorrect and unsupported. As the litigation over the role of the Massachusetts Port Authority in the 9/11 terror attacks reflects, *In re: September 11 Litigation*, 280 F.Supp. 2d at 279, App. 758-759, airport operators are in fact frequently subject to negligence claims in a variety of circumstances.[7] And as explained above, TSA's reliance on the SAFETY Act, 6 U.S.C. § 442(a)(1), TSA Br. at 58, 64, as the solution to airports' liability concerns is misplaced. *Supra* 20-22.

Finally, TSA argues that "the National Amendment applies to both public and private entities, underscoring that the anti-commandeering doctrine does not

---

[7] *E.g.*, *City of Houston v. Ayala*, 628 S.W.3d 615 (Tex. Ct. App. 2021) (windstorm destroyed aircraft); *Washburn v. Lawrence County Bd. of Comm'rs*, 720 F.3d 347 (6th Cir. 2013) (hangar door fell off and struck plaintiff); *Potomac Aviation, LLC v. Port Auth. of New York and New Jersey*, 413 N.J. Super. 212 (App. Div. 2010) (automobile crashed through airfield fence into plaintiff's airplane); *Screaming Eagle Air, Ltd. v. Airport Comm'n of Forsyth County*, 97 N.C. App. 30 (N.C. Ct. App. 1990) (aircraft collided with stray dog on runway).

SUBJECT TO PROTECTIVE ORDER IN
City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.
22

apply." TSA Br. at 62. TSA concedes that all 165 airports subject to the National Amendment are public entities. *Id*. at 63; *cf. Haaland v. Brackeen*, 599 U.S. 255, 285 (2023) (no Tenth Amendment violation where state unable to identify "core of involuntary proceedings committed exclusively to the sovereign"). Nonetheless, TSA argues that, "in certain situations," an airport operator may have an "exclusive area agreement" with a foreign air carrier or aircraft operator pursuant to which the carrier would be responsible for screening. TSA Br. at 63. TSA does not identify which airports have such "exclusive area agreements," or how many there may be, or describe the screening burden which the National Amendment could impose in those situations. Whatever that burden might be, it was insufficient for TSA even to reference in its cost analyses. App. 658-659, 723.[8]

---

[8] TSA also suggests that the Airport Petitioners' argument on the Tenth Amendment somehow hinges on their immunity from antitrust scrutiny. TSA Br. at 61, citing *E.W. Wiggins Airways, Inc. v. Massachusetts Port Auth.*, 362 F.2d 52 (1st Cir. 1966); *Deak-Perera Hawaii, Inc. v. Dep't of Transp. Hawaii*, 553 F. Supp. 976 (D. Hawaii 1983). TSA misunderstands the Airport Petitioners' argument. The Airport Petitioners cite *E.W. Wiggins* and *Deak-Perera* in response to the argument in TSA's denial letters that airports operate as commercial entities and not in their sovereign capacity. App. 891. Both *E.W. Wiggins* and *Deak-Perera* hold that airports act in a sovereign capacity, not as a "private business." Opening Brief at 22. The Airport Petitioners' argument has nothing to do with antitrust immunity.

**SUBJECT TO PROTECTIVE ORDER IN**
City of Billings v. TSA, **Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

23

## IV. TSA Failed to Comply with the APA's Public Notice and Comment Requirement.

Because it imposes new, binding, and burdensome requirements on airport operators all over the United States, the National Amendment constitutes "an agency statement of general…applicability and future effect designed to implement…policy," and must comply with the APA's public notice and comment requirements.  5 U.S.C. §§ 551(4), 553(b) & (c); *see Electronic Privacy Information Center v. United States Dep't of Homeland Sec.*, 653 F.3d 1, 5-7 (D.C. Cir. 2011) (hereinafter "*EPIC*"); *Orengo Caraballo v. Reich*, 11 F.3d 186, 195 (D.C. Cir. 1993) (APA public rulemaking requirement applies where agency action "create[s] new rights or duties").

TSA invokes 49 C.F.R. § 1542.105(c) in its attempt to evade public notice and comment, arguing that where "safety and public interest require," the agency may follow the procedures in that section to "amend a security program."  TSA Br. 64-66.  TSA ignores that § 1542.105(c) specifically and repeatedly refers to "a security program" and "the airport operator" in the singular, unambiguously indicating that the regulation empowers TSA to amend an *individual* airport's security plan, not *all* airports' plans all at once with no public notice and comment. 49 C.F.R. § 1542.105(c) (emphasis added); *see Kisor*, 588 U.S. at 574-75 (court

SUBJECT TO PROTECTIVE ORDER IN
City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.
24

should not defer to agency interpretation of a regulation unless the regulation is genuinely ambiguous).  Furthermore, the regulation cannot short-circuit the APA by providing a vehicle for TSA to issue rules of general applicability to *all* airports without public notice and comment.  *See EPIC*, 653 F.3d at 7 ("the purpose of the APA would be disserved if an agency with a broad statutory command…could avoid notice-and-comment rulemaking simply by promulgating a comparably broad regulation…and then invoking its power to interpret that statute and regulation in binding the public to a strict and specific set of obligations"); *Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 93 (D.C. Cir. 2012) (exceptions to the APA's notice and comment requirements should be "narrowly construed and only reluctantly countenanced" (quoting *State of N.J., Dept. of Environmental Protection v. EPA*, 626 F.2d 1038, 1045 (D.C. Cir. 1980))).

Indeed, this Court has already rejected TSA's prior attempts to bypass public notice and comment when imposing sweeping, generally applicable requirements which, like the National Amendment, implicate "privacy, safety, and efficacy." *See EPIC*, 653 F.3d at 5-8.  TSA attempts to distinguish *EPIC* by claiming that the National Amendment "has no similar effect on the public at large."  TSA Br. 68. But in the same breath TSA asserts that "safety and public interest require" the

SUBJECT TO PROTECTIVE ORDER IN
City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.
25

National Amendment, allowing TSA to bypass public notice and comment. TSA Br. 66. Aside from its self-contradiction, TSA's claim that the Amendment does not affect the "public at large" is absurd. "[Airport screeners] perform their screening duties not only for those boarding airplanes, but also for society generally. It is both their expectation, and ours, that the duty of screening was performed for the benefit of passengers and those on the ground…" *In re September 11 Litigation*, 280 F.Supp.2d at 292-93.

Finally, TSA claims the Petitioners "have provided no basis to second-guess TSA's determination" that delegating responsibility for aviation worker screening to airports is necessary to address a significant threat to aviation security. TSA Br. 66. But this assertion completely ignores that TSA must establish – in the administrative record – a "reasonable justification" for issuing the National Amendment. *See United Steel*, 925 F.3d at 1285. Where, as here, the agency has failed to carry that burden (the administrative record contains nothing more than vague references to security threats and conclusory statements that the Amendment is "necessary," *see, e.g.,* App. 513), there is no requirement for the Petitioners to prove the agency's action was unnecessary. *See United Steel*, 925 F.3d at 1285.

**SUBJECT TO PROTECTIVE ORDER IN**
City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

26

## V. The National Amendment Violates the Right to Privacy Guaranteed by the Montana Constitution.

TSA hinges its argument regarding whether the National Amendment violates the Montana Constitution on the permissibility of airport screening searches under the Fourth Amendment. TSA Br. at 70-71, *citing EPIC*, 653 F.3d at 10, and *Chandler v. Miller*, 520 U.S. 305, 323 (1997). But Fourth Amendment jurisprudence is not controlling with respect to screening protocols and procedures developed, funded and implemented by local officials in Montana, who are also governed by the increased protections for personal privacy embedded in the Montana Constitution. *See, e.g., State v. Goetz*, 345 Mont. 421, 427 (2008).

TSA acknowledges, TSA Br. 71, that if the Montana constitution applies to the National Amendment, it requires an "objectively reasonable belief" that the property searched "posed some real threat to safety." *State v. Hamilton*, 314 Mont. 507, 518 (2003). TSA argues though, that this requirement only applies to "a benign object" like a wallet, and not to the property that would be searched at an aviation worker portal. TSA does not explain how a purse or a briefcase containing the personal effects of an aviation worker is not a "benign object," but somehow, by itself, creates an "objectively reasonable belief" of a "real threat to safety."

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

TSA concludes its argument regarding the Montana Constitution by asserting that "[e]ven assuming that an objection grounded in a state constitution could provide a basis for challenging the National Amendment, TSA reasonably rejected that argument here."  TSA Br. 72.  This unsupported statement reflects disrespect for valid, binding, state constitutional law, and certainly provides no comfort to local officials in Billings and Glacier Park who will be required to engage in conduct that violates Montana law.[9]

## VI.  Petitioner Airports Council International-North America Has Standing to Challenge the National Amendment in the Administrative Process and in this Court.

In a brief footnote, TSA Br. 38-39, n. 4, TSA responds to the Airport Petitioners' argument that the Airports Council International-North America ("ACI-NA") had standing to challenge the National Amendment both in this Court and at the administrative level.  This Court "need not consider cursory arguments

_____

[9] TSA notes that no petitioners from other states with constitutional privacy protections greater than those afforded by the Fourth Amendment raised similar concerns to those raised by Billings and Glacier Park.  TSA Br. 72, n. 9. Nonetheless, local officials in those states, including for example Alaska, *McKelvey v. State*, 474 P.3d 16, 26-27 (Alaska 2020), Colorado*, People v. McKnight*, 446 P.3d 397, 405-412 (Colo. 2019), and Washington, *York v. Wahkiakum Sch. Dist. No. 200*, 178 P.3d 995, 1005 (Wash. 2008), would be subject to claims for damages and injunctive relief under their state constitutions if the National Amendment went into effect.

SUBJECT TO PROTECTIVE ORDER IN
City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR
PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW",
AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR
OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT
AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.
28

made only in a footnote." *National Labor Relations Board v. NP Palace LLC*, 1 F.4th 12, 16 (D.C. Cir. 2021), quoting *Hutchins v. District of Columbia*, 188 F.3d 531, 539 n. 3 (D.C. Cir. 1999) (en banc).  And in any case, TSA's arguments regarding ACI-NA's standing are incorrect.

TSA does not deny that ACI-NA has Article III representational standing, but simply argues that the Court need not reach the issue because other entities do have standing.  As to ACI-NA's standing before TSA, TSA failed to address the argument that a party entitled to judicial review of agency action "normally" has standing at the agency level.  See e.g., *Nichols v. Bd. of Trs. of Asbestos Workers Local 24 Pension*, 835 F.2d 881, 896-897 (D.C. Cir. 1987).  TSA argues, citing *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009), that ACI-NA's claim to standing "is grounded solely on an asserted 'procedural right in vacuo'," but ACI-NA identified in its petition for reconsideration the concrete and individualized harms the National Amendment would impose on ACI-NA's members, including enormous costs, unrealistic deadlines, and "potentially catastrophic liability."  App. 829-830.  Finally, the fact that TSA chose to address ACI-NA's petition for reconsideration does not mean that TSA's rejection of ACI-NA's standing is "harmless error."  If that were so, agencies could consistently

SUBJECT TO PROTECTIVE ORDER IN
City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.  UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

29

deny standing to representational organizations like ACI-NA, address the merits of their petition in dicta, and then assert, irrespective of the merits of the petition, that the organization has no right of appeal.

## CONCLUSION

The administrative record reflects that TSA is attempting to abdicate any responsibility regarding aviation worker screening. TSA has no authority to do so. For that reason, and the other reasons stated above and in the Airport Petitioners' Opening Brief, the Airport Petitioners request that this Court reverse the denial of the Airport Petitioners' Petitions for Reconsideration and vacate the National Amendment.

The City of Billings *et al.*,

By their attorneys,

/s/   *Melissa C. Allison*
Melissa C. Allison
   mallison@andersonkreiger.com
David S. Mackey
   dmackey@andersonkreiger.com
Carlos R. Rosende
   crosende@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109

Date: May 21, 2024                    T: 617.594.5940

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR
PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW",
AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR
OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT
AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume requirements of Federal Rules of Appellate Procedure 27(d)(2)(A) and Circuit Rule 27(a)(2) because the brief contains 6,191 words, as determined by the word-count function of Microsoft Word 365; and

2.    This brief complies with the typeface requirements of the Federal Rules of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman font.

Dated:  May 21, 2024

/s/  *Melissa C. Allison*
Melissa C. Allison
   mallison@andersonkreiger.com
David S. Mackey
   dmackey@andersonkreiger.com
Carlos R. Rosende
   crosende@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk Street, 21st Floor
Boston, MA 02109
T: 617.594.5940

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA**, Nos. 23-1290, 1328 (D.C. Cir.)
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR PARTS 15 AND 1520. NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW", AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION. UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION. FOR U.S. GOVERNMENT AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.

## CERTIFICATE OF SERVICE

I hereby certify on May 21, 2024, I caused a true and correct copy of this brief to be served on Respondents by electronic mail.

/s/   *Melissa C. Allison*
Melissa C. Allison

May 21, 2024

**SUBJECT TO PROTECTIVE ORDER IN**
**City of Billings v. TSA, Nos. 23-1290, 1328 (D.C. Cir.)**
WARNING: THIS RECORD CONTAINS SENSITIVE SECURITY INFORMATION THAT IS CONTROLLED UNDER 49 CFR
PARTS 15 AND 1520.  NO PART OF THIS RECORD MAY BE DISCLOSED TO PERSONS WITHOUT A "NEED TO KNOW",
AS DEFINED IN 49 CFR PARTS 15 AND 1520, EXCEPT WITH THE WRITTEN PERMISSION OF THE ADMINISTRATOR
OF THE TRANSPORTATION SECURITY ADMINISTRATION OR THE SECRETARY OF TRANSPORTATION.
UNAUTHORIZED RELEASE MAY RESULT IN CIVIL PENALTY OR OTHER ACTION.  FOR U.S. GOVERNMENT
AGENCIES, PUBLIC DISCLOSURE IS GOVERNED BY 5 U.S.C. 552 AND 49 CFR PARTS 15 AND 1520.