[ORAL ARGUMENT HELD ON OCTOBER 17, 2024]

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

|  |  |
|---|---|
| CITY OF BILLINGS, *et al.*,<br><br>Petitioners,<br><br>v.<br><br>TRANSPORTATION SECURITY ADMINISTRATION AND HA NGUYEN MCNEILL, ACTING ADMINISTRATOR,<br><br>Respondents. | No. 23-1290 |

**RESPONSE TO PETITIONERS' RENEWED MOTION FOR
IMMEDIATE ISSUANCE OF MANDATE**

Respondents respectfully oppose petitioners' renewed motion for immediate issuance of the mandate or, in the alternative, an order setting a deadline for the Transportation Security Administration (TSA) to publish a Notice of Proposed Rulemaking.

1. This case concerns a challenge to TSA's 2023 amendment of airport security programs (the National Amendment). In its August 22, 2025, opinion, this Court held that TSA had failed to comply with the Administrative Procedure Act's (APA's) notice-and-comment

procedures, and vacated the amendment. *City of Billings v. TSA*, 153 F.4th 46, 51-54 (D.C. Cir. 2025). "In view of the security risks that might come about in the absence of the rule," however, the Court withheld its mandate to give TSA the opportunity to adopt a procedurally sound rule. *Id.* at 49. The Court directed TSA to submit status reports at 60-day intervals apprising the Court of its progress. *Id.* at 54.

2. On October 3, 2025, petitioners filed a petition for panel rehearing, in which they asked the Court to issue its mandate within 180 days, citing costs to petitioners if the National Amendment remains in place pending rulemaking. *Pet. for Reh'g*, No. 23-1290 (D.C. Cir. Oct. 3, 2025). The government's response explained that TSA is moving with appropriate speed to promulgate a procedurally sound rule and issuing the mandate before such rule is in place would create unacceptable risks to airport security. *Resp. to Pet. for Reh'g*, No. 23-1290 (D.C. Cir. Nov. 19, 2025); *see also id.* at 7-8 (discussing TSA's October 16, 2025, Industry Security Awareness Message, which details TSA's plans to enforce the National Amendment during rulemaking).

2

This Court denied the petition for panel rehearing on December 3, 2025. *Order*, No. 23-1290 (D.C. Cir. Dec. 3, 2025).

3. On December 31, 2025, petitioners moved for immediate issuance of the mandate, making the same arguments they made in their unsuccessful petition for rehearing. *Mot. for Immediate Issuance of the Mandate*, No. 23-1290 (D.C. Cir. Dec. 31, 2025). Petitioners further argued that the status reports submitted by TSA demonstrate that the agency "ha[d] failed to make any progress at all" towards rulemaking. *Id.* at 2.

The government's response explained that this was incorrect, and that nothing in the two status reports that had been submitted since this Court's opinion issued supported petitioners' accusation that TSA was waiting to comply with the Court's order or otherwise purposefully delaying rulemaking. *Resp. to Mot. for Immediate Issuance of the Mandate* at 3, No. 23-1290 (D.C. Cir. Jan. 9, 2026). To the contrary, the first status report informed the Court that TSA had determined that it would undertake APA-compliant rulemaking to replace the National Amendment. *Status Report*, No. 23-1290 (D.C. Cir. Oct. 30, 2025)). And the second status report informed the Court that rulemaking had been

paused during a 43-day lapse in government appropriations that began on September 30, 2025, and that work on the rule had resumed when appropriations were restored on November 12, 2025. *Status Report*, No. 23-1290 (D.C. Cir. Dec. 22, 2025)). This Court denied petitioner's motion on January 12, 2026. *Order*, No. 23-1290 (D.C. Cir. Jan. 12, 2026).

4. Petitioners now renew their prior motion for immediate issuance of the mandate or, in the alternative, request that this Court issue and order requiring TSA to publish a Notice of Proposed Rulemaking within 120 days. *Motion* at 1, No. 23-1290 (D.C. Cir. May 11, 2026). That motion reiterates the same arguments made in petitioners' unsuccessful petition for panel rehearing and their prior motion for immediate issuance of the mandate. Those arguments should again be rejected.

*First*, petitioners reassert the argument that immediate issuance of the mandate is necessary to avoid costs to petitioners if the National Amendment remains in place pending rulemaking. Mot. 2-3. The government fully addressed this argument in its response to the petition for panel rehearing and explained that issuing the mandate

4

before a procedurally-sound rule is in place would create unacceptable risks to airport security. *See Resp. to Pet. for Reh'g*, No. 23-1290 (D.C. Cir. Nov. 19, 2025); *see also id.* at 7-8 (discussing TSA's October 16, 2025, Industry Security Awareness Message, which details TSA's plans to enforce the National Amendment during rulemaking). Petitioners' renewed motion for immediate issuance of the mandate does not identify any purported harm to petitioners that outweighs those risks.[1]

*Second*, petitioners urge that TSA's recent status reports demonstrate that the agency has demonstrated a "lack of diligence" or has otherwise purposefully delayed rulemaking. Mot. 3. That is incorrect.

---

[1] In a footnote, petitioners reiterate their unsuccessful argument that "this Court's precedents do not support withholding a vacatur mandate" without an established deadline. Mot. 3 n.3. But as explained in the government's response to the petition for panel rehearing, this Court has on numerous occasions allowed an invalid rule to remain in place while the agency takes corrective action, without setting a fixed deadline to do so. *See, e.g., American Bankers Ass'n v. National Credit Union Admin.*, 934 F.3d 649, 674 (D.C. Cir. 2019); *Electronic Privacy Information Cntr. v. U.S. Dep't of Homeland Security*, 653 F.3d 1, 11 (D.C. Cir. 2011); *North Carolina v. EPA*, 550 F.3d 1176, 1177 (D.C. Cir. 2008).

Since petitioners' prior motion for immediate issuance of the mandate, TSA has filed two status reports.  Both of those reports were filed during the recent 75-day lapse in appropriations that fund the TSA, which began at the end of the day on February 13, 2026, and ended on April 30, 2026.  *See* Homeland Security and Further Additional Continuing Appropriations Act, 2026, Pub. L. No. 119-86 (Apr. 30, 2026).

The first status report, filed on February 20, 2026, informed this Court that TSA's leadership had "formally designated the proposed rulemaking effort as one of the highest regulatory priorities for TSA in 2026," and that the agency had "initiated drafting of the preamble for the notice of proposed rulemaking as well as the regulatory text." *Status Report* at 1-2, No. 23-1290 (D.C. Cir. Feb. 20, 2026).  That drafting process includes "evaluating ancillary policy decisions regarding how to frame the requirements in the rule." *Id.* at 2.  The second status report, filed on April 21, 2026, explained that the process of drafting the preamble and regulatory text remains "ongoing," and that this rulemaking "remains one of TSA's highest regulatory priorities for 2026." *Status Report* at 2, No. 23-1290 (D.C. Cir. Apr. 21, 2026).

Nothing in these reports supports petitioners' accusation that TSA "is not acting diligently to comply" with this Court's order. Mot. 3. To the contrary, the reports demonstrate that TSA continued its efforts to advance the rulemaking while operating at a limited capacity during a 75-day lapse in appropriations. This only underscores that the rulemaking effort remains a high regulatory priority and that TSA is working diligently to comply with this Court's order. Petitioners' contrary argument that TSA has unreasonably delayed rulemaking is particularly unfounded given that it filed this renewed motion for immediate issuance of the mandate only 11 days after appropriations were restored to the agency.[2]

---

[2] Petitioners note that TSA "pursued other priorities" during the 75-day lapse in appropriations, including by publishing "a final rule regarding reforms to its regulatory process" on April 27, 2026. Mot. 3 & n.2 (citing 91 Fed. Reg. 22,431 (Apr. 27, 2026)). But the final rule cited by petitioners was promulgated by the Department of Transportation, not by TSA (which is part of the Department of Homeland Security). *See* 91 Fed. Reg. 22,431 (Apr. 27, 2026). Petitioners also note that TSA "continues to implement" and "propose amendments" to unrelated security directives that are not at issue in this litigation. Mot. 3 & n.2. Because those unrelated security directives are designated Sensitive Security Information, *see id.*, we will not describe any such efforts in this motion response. In any event, TSA's simultaneous pursuit of other regulatory priorities while actively working on this rulemaking does not demonstrate a lack of diligence or unreasonable delay.

7

*Third*, petitioners complain that TSA's prior status reports are too "vague," Mot. 3, because they do not "describe how much progress TSA has made drafting the text of the rule" or identify any internal deadlines for the rulemaking process, Mot. 2. But the fact that TSA has not disclosed a specific word count or other privileged details about its deliberative process does not demonstrate a lack of diligence, and petitioners cite no authority to support their contrary argument. *Cf. Department of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) ("The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government." (quotation marks omitted)). Moreover, as noted, TSA's most recent status reports were filed while TSA was operating at a limited capacity during what was, at that point, an ongoing lapse in appropriations with no predetermined end. It should therefore be unsurprising that TSA, while continuing to be actively engaged on the rulemaking effort despite the recent lapse, nevertheless

8

did not (and could not) predict when the agency would finish drafting a notice of proposed rulemaking or receive the approvals necessary to publish that document in the Federal Register.

For this same reason, petitioners' alternative request that this Court order TSA to publish a notice of proposed rulemaking within 120 days is unwarranted. TSA's actions thus far demonstrate that it is acting diligently to comply with the Court's opinion notwithstanding two significant lapses in the appropriations that fund TSA, and petitioners have not demonstrated that the arbitrary deadline they request is necessary. Consistent with this Court's opinion, TSA will continue to submit status reports every 60 days, which will allow the Court and petitioners to monitor the agency's progress.

5. For the foregoing reasons, petitioners' renewed motion for immediate issuance of the mandate or, in the alternative, an order setting a deadline for to publish a Notice of Proposed Rulemaking within 120 days, should be denied.

Respectfully submitted,

SHARON SWINGLE
 /s/ *Jennifer L. Utrecht*
JENNIFER L. UTRECHT
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7710*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 353-2963*

MAY 2026

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing response complies with the requirements of Federal Rule of Appellate Procedure 27(d) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font. I further certify that this response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 1,685 words according to the count of Microsoft Word.

*/s/ Jennifer L. Utrecht*
Jennifer L. Utrecht